UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DERRICK BROOKS, CLIFTON DEMECO,
and BRIAN BLOWERS, on behalf of
themselves and all others similarly situated,

                            Plaintiffs,

        -v-                                          16-CV-1025

SAMUEL D. ROBERTS, Commissioner of the
New York State Office of Temporary and
Disability Assistance,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

NATIONAL CENTER FOR LAW & ECONOMIC          MARC COHAN, ESQ.
        JUSTICE, INC.                       PETRA T. TASHEFF, ESQ.
Attorneys for Plaintiffs
275 Seventh Avenue - Suite 1506
New York, New York 10001

EMPIRE JUSTICE CENTER - ALBANY              SAIMA A. AKHTAR, ESQ.
Attorneys for Plaintiffs                    SUSAN C. ANTOS, ESQ.
119 Washington Avenue
2nd Floor
Albany, New York 12210

HON. ERIC T. SCHNEIDERMAN                   C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York  Ass't Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224


DAVID N. HURD
United States District Judge

# TABLE OF CONTENTS

TABLE OF ABBREVIATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

II.    FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
       A.    Federal Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
       B.    New York State's Implementation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
       C.    Named Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
       D.    Recent Document Revisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

III.   DISCUSSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
       A.    Class Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
             1.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
             2.    Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
                   a.    Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
                   b.    Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
                   c.    Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
                   d.    Adequacy of Representation. . . . . . . . . . . . . . . . . . . . . . . . . .  23
             3.    Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

       B.    Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
             1.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
             2.    Likelihood of Success. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
                   a.    Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
                         i.    ABAWD "Classification". . . . . . . . . . . . . . . . . . . . . . . . .  34
                         ii.   Benefit Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
                               (1).   Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
                               (2).   Opportunity to Be Heard.. . . . . . . . . . . . . . . . . . .  38
                   b.    SNAP Act and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . .  39
                         i.    ABAWD "Classification". . . . . . . . . . . . . . . . . . . . . . . . .  40
                         ii.   Benefit Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . .  41
             3.    Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46
             4.    Public Interest and Balance of Hardships.. . . . . . . . . . . . . . . . . . . . .  48

       C.    Failure to Name a Necessary Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48
             1.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

       D.    Failure to State a Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50
             1.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50
             2.    Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51
                   a.    ABAWD "Classification".. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51
                   b.    Benefit Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52
             3.    SNAP Act and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

a.    ABAWD "Classification"................................. 53

b.    Benefit Termination.................................. 53

IV.    CONCLUSION........................................... 54

V.    ORDER. .............................................. 55

VI.    ADDENDUM. ........................................... 56

## **TABLE OF ABBREVIATIONS**

ABAWD:          Able Bodied Adults Without Dependents

DSS:              Department(s) of Social Services

FNS:              Food and Nutrition Service

NOAA:           Notice of Adverse Action

OTDA:          New York State Office of Temporary and Disability Assistance

SNAP:           Supplemental Nutrition Assistance Program

SNAP Act:      Food and Nutrition Act of 2008

USDA:          United States Department of Agriculture

# MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

The named plaintiffs Derrick Brooks ("Brooks"), Clifton DeMeco ("DeMeco"), and Brian Blowers ("Blowers") (collectively "plaintiffs") seek relief on behalf of themselves and a putative class of fellow New York State residents receiving Supplemental Nutrition Assistance Program ("SNAP") benefits, commonly referred to as food stamps, who have had, are now having, or will have their benefits terminated.[1] The benefits were terminated following New York's implementation of a federal rule imposing a three month time limit on receipt of food stamps by able bodied adults without dependents ("ABAWDs") unless they meet work requirements. Plaintiffs seek relief from defendant Samuel D. Roberts ("defendant"), in his official capacity as Commissioner of the New York State Office of Temporary and Disability Assistance (the "OTDA"). The OTDA is designated by the United States Department of Agriculture (the "USDA") Food and Nutrition Service (the "FNS") as the state agency to provide food stamp benefits to low income New York residents like plaintiffs.

Plaintiffs' Class Action Complaint ("Complaint") alleges declaratory and injunctive relief under 28 U.S.C. §§ 2201–02 and 42 U.S.C. § 1983 is necessary to enjoin defendant from terminating or continuing to terminate the SNAP benefits of plaintiffs and the proposed class and subclasses, a practice which allegedly violates the Due Process Clause of the Fourteenth Amendment, federal statutes, and implementing regulations. Plaintiffs seek both

---

[1] Since initiation of this action, plaintiff Brooks reapplied for SNAP benefits and successfully reestablished his eligibility in the County of Schenectady on or about September 20, 2016. Additionally, at the time plaintiffs filed their instant motions, Blowers was still receiving benefits but they have since been discontinued.

a prohibitory injunction enjoining defendant's actions as well as a mandatory injunction compelling defendant to reinstate benefits.

The parties have filed three motions: (1) plaintiffs have moved for class certification under Federal Rule of Civil Procedure ("Rule") 23 and (2) a preliminary injunction under Rule 65, while defendant has moved for (3) dismissal of the Complaint in its entirety under Rule 12 on the basis that plaintiffs fail to name a necessary party and fail to state valid causes of action for due process and statutory violations. The three motions were fully briefed, with supplemental briefing on plaintiffs' motion for preliminary injunction. Oral argument was heard on November 30, 2016 in Utica, New York, where decision on all three motions was reserved.

## II.  **FACTUAL BACKGROUND**[2]

### A.  **Federal Program**

Congress established the federally funded, state-administered food stamp program in 1964.  7 U.S.C. §§ 2011–2036(c); 7 C.F.R. §§ 271–285.  Food stamp applicants are entitled to food stamps under federal law subject to satisfying certain objective criteria for eligibility, such as employment requirements and household income.  In 2008, the federal food stamp program was renamed SNAP, and the Food Stamp Act was renamed the Food and Nutrition Act of 2008 (hereinafter the "SNAP Act").  The head of the USDA, the Secretary of Agriculture, is charged with promulgating implementing regulations for the food stamp program.  7 U.S.C. § 2013(c); 7 C.F.R. § 273.

---

[2] The following facts are taken from the Complaint and assumed true unless otherwise noted.

At the federal level, SNAP is administered by the USDA FNS.  The federal government provides complete funding to states for all benefits and provides fifty percent of the administrative costs.  Each state must designate an agency responsible for administering SNAP and ensuring federal compliance; in New York this is the OTDA.  As Commissioner of the OTDA, defendant is responsible for the operation of the SNAP program in New York, as carried out by the 58 social services districts.

The OTDA determines the eligibility of applicant households and certifies and recertifies their eligibility in accordance with rules set forth by the federal SNAP Act.  The OTDA certifies eligible households for a specified period of time, called a certification period. 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.10(f).  Households must then apply to renew their eligibility, a process called recertification.  7 C.F.R. § 273.14.  As part of the eligibility determination, applicants must have an interview with a SNAP worker (through the local county Departments of Social Services (the "DSS")).

In addition to meeting income requirements, work requirements are also in place for certain adults known as able bodied adults without dependents, or ABAWDs.  7 U.S.C. § 2015(o).  An ABAWD is an individual between the ages of 18 and 50 who is not disabled and does not have a dependent under the age of 18.  ABAWDs must satisfy work requirements to maintain eligibility for SNAP benefits.  ABAWDs who are not working at least 80 hours per month (paid or unpaid), participating in an employment and training program at least 80 hours per month, or complying with a designated work program, cannot receive SNAP benefits for more than three months in a 36 month period (the "work rules").  Id. § 2015(o)(2).

Federal law provides certain conditions under which ABAWDs may be exempt from the work rules and thus able to receive benefits in excess of three months within a 36 month period. These circumstances include if the ABAWD is receiving temporary or permanent disability benefits, responsible for the care of a child or incapacitated household member, pregnant, or already exempt on another basis, such as those receiving unemployment compensation for example, or meet certain other criteria (the "exemptions"). Id. § 2015(o)(3). According to defendant, an ABAWD may assert and document an exemption at any time, including after receiving notice that benefits will be terminated for being an ABAWD and failing to comply with the work rules. Defendant contends that if an ABAWD properly asserts and documents an exemption, benefits are not terminated for failure to meet the work rules. A good cause provision also exists for individuals who temporarily cannot comply with the 80 hour a month work requirement because of temporary circumstances beyond their control, such as illness or lack of transportation (the "good cause exceptions"). 7 C.F.R. § 273.24(c).

In November 2015, the FNS issued a guidance document to states advising that they must screen ABAWDs for exemptions from the work rules and connect ABAWDs with information to maintain eligibility. Compl. ¶ 44. States are also responsible for assessing an individual's fitness for work. The mandatory SNAP interview conducted by the DSS is critical in doing so.

Federal law requires that when a state or the DSS determines that a recipient's benefits should be terminated because of non-compliance with a program rule, such as the ABAWD work rules, a notice of adverse action must be sent to the recipient no later than 10 days before the effective date of the termination or reduction of benefits. 7 U.S.C.

§ 2020(e)(10); 7 C.F.R. § 273.13(a)(1).  For the notice to be legally adequate, it must explain in easily understandable language, the proposed action and the reason for the proposed action.  7 C.F.R. § 273.13(a)(2).  The regulations dictate that the notice must include the household's right to request a fair hearing, the telephone number of the food stamp office, (and if possible, the name of the person to contact for additional information); the availability of continued benefits; and the liability of the household for any overissuances received while awaiting a fair hearing if the hearing official's decision is adverse.  Id.  Finally, if there is an individual or organization available that provides free legal representation, the notice must also advise the household of the availability of the legal services.  Id.  Relatedly, with any proposed reduction or termination in benefits, the household must be provided an opportunity for a fair hearing and continued benefits until the hearing decision.  7 C.F.R. § 273.15(a).  The SNAP Act also mandates that any benefits improperly denied by a state must be promptly restored.  7 U.S.C. § 2020(b).

**B.  New York State's Implementation**

Due to high unemployment from 2009 to 2015, New York had a statewide waiver of the ABAWD work rules, meaning that they were not being enforced.  Due to improved economic conditions, the waiver was set to expire at the end of calendar year 2015.  Accordingly, the three month within 36 month time limit was set to be reincorporated into SNAP eligibility requirements in New York starting January 1, 2016.  On January 1, 2016, the expiration of the waiver became effective in 33 counties of New York's 62 counties.[3]  Compl. Ex. 1.  Approximately 53,000 SNAP recipients in New York are currently subject to time-

---

[3]  Defendant requested and was granted a continuing full waiver in twenty counties and a partial waiver (meaning only certain cities in a county) in nine counties based on continued high unemployment rates.

limited SNAP benefits because they are believed to be ABAWDs living in areas no longer under a waiver.  Compl. ¶ 51.  This action stems from defendant's alleged defective notice to these SNAP recipients.   Plaintiffs contend defendant failed to properly inform those recipients that they are now subject to additional work rules, and face termination of benefits for noncompliance.

On or about December 3, 2015, the OTDA mailed out a one page letter to certain SNAP households believed to contain at least one ABAWD living within counties where the waiver was set to expire.  Akhtar Decl., Ex. 3, ECF No. 9-4 (the "Notice of ABAWD Status"). According to defendant, it was mailed to the head of the SNAP household and was generated from information in the OTDA's information management system.  In order to receive the Notice of ABAWD Status, the household had to have an open SNAP case in October 2015 when the letter was generated, and meet the ABAWD criteria in the computer system for the letter to be generated, thereby missing some ABAWDs.  For example, the Notice of ABAWD Status was not provided to ABAWDs whose case was not open as of October 2015 or whose household composition may have changed to include an ABAWD after October 2015.  Further, it was only sent to those in counties where the waiver was known to be expiring.  As a result, some ABAWDs whose benefits were later terminated, never received information about the ending of the waiver, the reintroduction of the three month out of 36 month time limit, or the work rules with which they were expected to comply.

The letter advised that the recipient was receiving it because "you or someone in your household has been determined to be an . . . ABAWD."  Notice of ABAWD Status.  It did not identify specifically who was the ABAWD in the household.  It explained what an ABAWD is and what one must do in order to maintain SNAP eligibility (comply with work rules) and that

failure to comply with the work rules without good cause would result in the termination of benefits. The Notice of ABAWD Status advised the recipient to contact the DSS if the ABAWD is in fact meeting the work rules or to discuss how to meet them. It did not inform the recipient that they could request a fair hearing to dispute their ABAWD status. It noted that if SNAP eligibility is lost, it may be regained again but did not indicate how. It also advised to contact the DSS "if you believe that everyone in your SNAP household should be exempt from these requirements because each adult individual meets one or more of the conditions listed." Id. The exemptions, though not respectively identified as such, are listed. The Notice of ABAWD Status also provides that, for ABAWDs living in certain areas with high unemployment, the work rules will not apply. The letter does not identify which counties were still subject to waivers or partial waivers.

At the time the Notice of ABAWD Status was disseminated, the OTDA contacted all the DSS to provide them with guidance on enforcing the work rules. The Notice of ABAWD Status was a one time mailing by the OTDA and defendant left additional notification of ABAWD status to the DSS offices. The DSS were advised but not required to provide the same Notice of ABAWD Status in the application and recertification processes to New York residents and were permitted to send their own letters to SNAP recipients subject to work rules in order to more fully assess whether the recipients meet ABAWD status or qualify for an exemption or good cause exception. Only four out of 58 of the DSS opted to mail letters offering to assist potential ABAWDs in finding employment and training programs, or show they were not subject to ABAWD work rules. For those SNAP households due to recertify in early 2016, the recertification packet mailed out by the OTDA was supposed to contain information about the ABAWD work rules, exemptions, and good cause exceptions to further

inform recipients of the work rules. The DSS was again encouraged but not required to relay ABAWD status to households during the application and recertification interviews.

According to plaintiffs, though the OTDA is the state agency charged with operating SNAP in New York, it fails to mandate a specific process or requirement that the DSS employees (who actually see the SNAP clients) inform the applicant or recipient of their status as an ABAWD, what the work rules are, what the time limits are, what the exemptions are, or how good cause may be claimed.

In February 2016, the OTDA advised the DSS not to discontinue benefits for ABAWDs failing to meet the work rules until after the completion of the third full month of benefits. The OTDA provides to the DSS the form notice for terminating benefits. This Notice of Adverse Action is computer generated using the OTDA's information management system. Beginning on April 1, 2016, the DSS began notifying SNAP households with ABAWDs not in compliance with the work rules that their benefits would be reduced or discontinued.

The Notice of Adverse Action states that benefits will be discontinued as of a set date because the recipient is an ABAWD not meeting the work rules (therein defined). See e.g., DeMeco Decl., Ex. 2, ECF No. 9-13 (the "NOAA"). It does not explain what specific information led the DSS to the determination that the recipient is an ABAWD and does not identify which months of SNAP benefits were countable to reach the three month time limit. It advises that if the ABAWD is meeting the work rules already, he or she should provide documentation to the DSS, and contact information is provided. Plaintiffs contend the NOAA fails to include sufficient information on how to do so. For those who are not meeting the work rules, but would like to continue receiving benefits, the NOAA indicates the recipient should contact the DSS to discuss what work opportunities may be available. Plaintiffs argue

this is insufficient advice on how to regain eligibility. For those who cannot meet the work rules, plaintiffs assert that the NOAA fails to include enough detailed information on what exemptions are available, how to document meeting an exemption, whom to contact to pursue an exemption, and makes no mention of the good cause exceptions. The NOAA also contains information regarding the individual's right to appeal the determination and the right to a fair hearing or conference with a supervisor.

After the termination of benefits to ABAWDs, the OTDA often assesses an overpayment for benefits issued between the end of the third countable month and the actual termination of benefits. Plaintiffs contend that because the overpayment results from the same inadequate process that results in the defective and unlawful ABAWD terminations, these overpayment rescissions are also unlawful.

## C. <u>Named Plaintiffs</u>

Plaintiff Brooks resides in Schenectady, New York in the County of Schenectady. The County of Schenectady's waiver expired January 1, 2016. Brooks began receiving SNAP benefits in December 2015 but did not receive the Notice of ABAWD Status mailed in December 2015 advising him of the impending ABAWD work rules. He received a NOAA shortly after April 19, 2016 advising that his benefits would be terminated effective April 29, 2016. Brooks Decl., Ex. 1, ECF No. 9-10. He is unable to work consistently due to poor health but was unaware he could be exempted from ABAWD work rules because he did not receive the Notice of ABAWD Status prior to the expiration of the waiver in his county, and the NOAA he received did not mention an exemption or good cause exception for those whose physical condition make them unfit to work the required 80 hours per month.

Plaintiff DeMeco lives in Floral Park, New York in the County of Nassau. The County of Nassau's waiver expired January 1, 2016. DeMeco had been receiving SNAP benefits for several years but did not receive the Notice of ABAWD Status mailed in December 2015 advising him of the impending ABAWD work rules. He received a NOAA on June 24, 2016 with a mailing and effective date of June 17, 2016. DeMeco Decl., Ex. 2, ECF No. 9-13. He spends many hours each week caring for his ill father but was unaware he could be exempted from ABAWD work rules because he did not receive the Notice of ABAWD Status prior to the expiration of the waiver in his county, and the NOAA he received did not mention an exemption or good cause exception for those who act as the primary caretaker of an incapacitated person.

Plaintiff Blowers resides in West Sand Lake, New York in the County of Rensselaer. The County of Rensselaer's waiver expired January 1, 2016. Blowers had been receiving SNAP benefits since 2015 and did receive the Notice of ABAWD Status mailed in December 2015 advising him of the impending ABAWD work rules. Blowers Decl., Ex. 1, ECF No. 9-15. Although he cannot work 80 hours a month because of his health problems, he did not seek an exemption or good cause exception because the Notice of ABAWD Status left him confused and unsure of whom to contact to do so. In July 2016 he recertified for benefits, and during the recertification interview, the DSS worker told him he was assumed to be able bodied. In August 2016 he received a NOAA that his benefits would be discontinued in September 2016 and he needed to repay the $970 he received as an non-compliant ABAWD from April through August 2016. Blowers Decl., Ex. 2, ECF No. 9-16.

### D. Recent Document Revisions

After the completion of briefing on the instant motions, defendant advised the undersigned that the OTDA had been in the process of revising the notices provided to SNAP applicants and recipients and revision was complete. ECF No. 33. The revisions were finalized and took effect on October 23, 2016. Various changes were made to the NOAA and to the decision letters received by new SNAP applicants approved for benefits and by recipients recertified as eligible for continued benefits. Guinn Decl., Exs. A ("Revised NOAA"), B ("Revised Application Decision"), C ("Revised Recertification Decision"), ECF Nos. 37-2–37-4. The revised notices however do not replace in full the prior documents that are the subject of plaintiffs' motions for class certification and preliminary injunction and defendant's motion to dismiss. Only discontinuances of benefits for a recipient's failure to comply with the work rules after October 23, 2016 are accomplished using the Revised NOAA. Similarly, only notifications of benefits approvals and recertifications after October 23, 2016 are accomplished using the Revised Opening Letter and the Revised Recertification Letter. The parties submitted supplemental briefing on the revised notices and maintain their positions.

Specifically, the Revised NOAA contains a detailed explanation of ABAWD qualifications, exemptions, and includes a section entitled "Good Cause." It provides information concerning the immediate restoration of benefits if the termination was improperly taken, a detailed description of how to challenge the agency's decision, an explanation on how to regain eligibility following benefit termination, and advice on what a recipient could do to continue receiving benefits beyond the three month time limit.

The OTDA also made similar alterations to its SNAP Opening Letter which is issued to all newly eligible SNAP households and its SNAP Recertification Letter which is issued to all SNAP households found eligible upon periodic recertification. The Revised Opening Letter and the Revised Recertification Letter now each include two pages of detailed information regarding who constitutes an ABAWD, explanation of the work rules, and a description of the exemptions and good cause exceptions.

Notably, plaintiffs do not have a class representative who received the Revised Opening Letter or Revised Recertification Letter, or who were notified by the Revised NOAA that their benefits were reduced or terminated.

## III. DISCUSSION

### A. Class Certification

### 1. Legal Standard

A district court enjoys broad discretion when it comes to resolving questions of class certification because it "is often in the best position to assess the propriety of the class and has the ability, . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted." Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001) (collecting cases).

However, because the class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979), "[a] party seeking class certification must *affirmatively* demonstrate [its] compliance with the Rule." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (emphasis added) ("Rule 23 does not set forth a mere pleading standard.").

Accordingly, "the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("In re IPO")).[4]

First, Rule 23 requires a party seeking certification to demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Second, the Rule requires a party to satisfy at least one of three additional requirements:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

---

[4] At this early stage the merits should be considered only to the extent they overlap with Rule 23's inquiry. Dukes, 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b).

Finally, courts have written a third, "implied requirement" into the Rule:  a party seeking certification must demonstrate that the proposed class is "ascertainable." Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 287 (S.D.N.Y. 2012).  Under this additional element, "'[a]n identifiable class exists if its members can be ascertained by reference to objective criteria.'" Stinson v. City of N.Y., 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (quoting In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 395 (S.D.N.Y. 2008)).

In sum, "[c]lass certification is appropriate where the proposed class meets, by a preponderance of the evidence following a court's 'rigorous analysis,' the requirements of Rule 23(a) and the proposed class constitutes one of the types of classes enumerated in Rule 23(b)." Stinson, 282 F.R.D. at 367 (citation omitted).

Plaintiffs seek to certify:

[A class] composed of [a]ll New York State residents receiving Supplemental Nutrition Assistance Program benefits who, since January 1, 2016, have had, are now having, or will have their benefits terminated for allegedly failing to meet a work requirement after receiving benefits for three out of thirty-six months,

[A subclass] of [a]ll New York State residents receiving Supplemental Nutrition Assistance Program benefits who, since January 1, 2016, have had, are now having, or will have their benefits terminated for allegedly failing to meet an ABAWD work requirement after receiving benefits for three out of thirty-six months and as to whom [d]efendant failed to provide a pre-termination notice

that is both adequate and is mailed at least 10 days before the effective date of the termination [Sub-Class A].

[A subclass] of [a]ll New York State residents receiving Supplemental Nutrition Assistance Program benefits who, since January 1, 2016, have had, are now having, or will have their benefits terminated for allegedly failing to meet an ABAWD work requirement after receiving benefits for three out of thirty-six months and as to whom [d]efendant has failed to send any initial written notice that the individual has been determined to be an ABAWD [Sub-Class B].[5]

Compl. ¶ ¶ 14-15.

Plaintiffs contend that courts in this Circuit routinely certify classes of public benefits applicants and recipients in similar cases challenging a policy or practice relating to the administration of public benefits.

**2. Rule 23(a)**

**a. Numerosity**

The first element requires plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).

This inquiry is "not strictly mathematical" but rather requires a court to "take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including:  (I) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) request for injunctive relief that would involve future class members." Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 120 (2d Cir. 2014) (citing

---

[5]  Boiled down to their simplest descriptions, the class includes all New York SNAP recipients who have had or will have their benefits terminated for failure to comply with the ABAWD work rules; all three named plaintiffs fit this class description.  Sub-class A includes those members of the class who received the allegedly defective NOAA (like plaintiffs Brooks and Blowers) and members who received an untimely and defective NOAA (like plaintiff DeMeco) and presumably those who now receive the Revised NOAA.  Sub-class B includes those members of the class who failed to receive any written notice that they qualified as an ABAWD (like plaintiffs Brooks and DeMeco).

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).  In other words, "[t]he numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC, 504 F.3d 229, 244-45 (2d Cir. 2007).

Plaintiffs have clearly carried their burden on this element.  As an initial matter, the proposed class exceeds forty members.  Morgan Stanley & Co., Inc., 772 F.3d at 120 ("Numerosity is presumed for classes larger than forty members.").  With respect to the class, plaintiffs' uncontested estimate is that there are at least 11,000 alleged ABAWDs spread across 33 social services districts in New York, all of whom have received or will receive deficient notices regarding their ABAWD status and their alleged non-compliance with work rules, and all of whom allegedly have been or will be terminated from SNAP without adequate due process.

With respect to the subclasses, plaintiffs have not provided estimates of purported members and maintain that such information is within defendant's possession, specifically attainable through defendant's computer program for tracking SNAP applicants and recipients, the Welfare Management System.  However, the burden rests on plaintiffs to affirmatively show numerosity at this stage of the proceedings, and plaintiffs have not done so with respect to the subclasses.  The class certification inquiry need not go any further with respect to the subclasses.

The contextual factors also weigh in favor of certification of the class.  For instance, plaintiffs' class includes low income residents spread across New York, the sort of population that makes joinder of individual members a difficult proposition due to their geographic

dispersion, limited if not non-existent financial resources, and the impracticability of each obtaining legal representation for their individual claims.

Finally, litigating such a suit as a class action would promote judicial economy, since it avoids multiple individual suits that raise the same issues and seek the same relief—stopping defendant from terminating benefits for members of the class without complying with due process and federal laws.

Accordingly, plaintiffs have demonstrated by a preponderance of the evidence that the class is sufficiently numerous such that joinder of all members is impracticable.

### b. **Commonality**

This element requires plaintiffs to demonstrate there "are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Importantly, this "does not require all questions of law or fact to be common," and "even a single common question will suffice." Sykes, 285 F.R.D. at 286; see also Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members.").

"The common question must lend itself to 'classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Sykes, 285 F.R.D. at 286 (quoting Dukes, 564 U.S. at 350). Importantly, "factual differences in the claims of the class do not preclude a finding of commonality." Id. at 287 (citation and internal quotation marks omitted). Rather, what

matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. at 286 (citation and internal quotation marks omitted).

Plaintiffs have met their burden on this element as well. Among other things, plaintiffs allege that the OTDA has applied a common course of unlawful conduct to the members of the class, in that the proposed class has or will suffer from the same harm, namely, the deprivation of SNAP benefits without adequate notice of their status as an ABAWD, without adequate notice of the work rules, and without fair process to evaluate ABAWDs for an exemption or good cause exception from the work rules.

The common answers to these questions will drive the resolution of the litigation— whether defendant's conduct violates the Constitution or federal law, and whether defendant should therefore be enjoined from engaging in that course of conduct. Admittedly, there are a variety of mechanisms by which applicants and recipients are informed of the ABAWD work rules and notified of adverse determinations. Initial SNAP applicants approved for benefits receive the Revised Opening Letter which now includes two pages of detailed information regarding who constitutes an ABAWD, explanation of the work rules, and a description of the exemptions and good cause exceptions. SNAP recipients are subject to periodic recertification by the DSS, during which time individuals are again informed of the work rules, exemptions, and good cause exceptions. Following their interview with DSS, approved SNAP recipients receive the Revised Recertification Letter which again includes the aforementioned information over two pages. Further, information concerning ABAWDs and the work rules is detailed in the instructions to the application and recertification and in the Client Rights and Responsibilities booklet provided to all SNAP recipients. Finally, the Revised NOAA includes language regarding ABAWD qualifications, exemptions, good cause

exceptions, and information concerning immediate restoration of benefits if the termination was improperly taken, and reapplication in the event of justified benefit termination.

While the manner in which a putative class member receives allegedly deficient notice regarding ABAWD status and the work rules may differ, factual differences in the claims do not preclude a finding of commonality.

In sum, plaintiffs have demonstrated by a preponderance of the evidence that there are questions of law or fact common to the class.

**c.  Typicality**

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).

"Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability."  Stinson, 282 F.R.D. at 370-71 (citation omitted).  "When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met."  Id. at 371.  Generally speaking, minor variations in the fact patterns underlying the individual claims will not preclude a finding of typicality unless there are "unique defenses" that threaten to become the focus of the litigation.  See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000).

Plaintiffs have carried their burden on this element for substantially the same reasons as set forth above—the members of the class share the same legal arguments because their claims are based on the common application of certain challenged actions.  Sykes, 285 F.R.D. at 287 ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites."); see also e.g.,

Butler, 289 F.R.D. at 99 (finding typicality satisfied where, for example, "whether exhaustion should be excused because administrative remedies were unavailable . . . is a question common to all members of the class").

Accordingly, plaintiffs have demonstrated by a preponderance of the evidence that the claims of the representative parties are typical of the claims of the class.

### d. **Adequacy of Representation**

This requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

"[T]he adequacy requirement is twofold:  the proposed class representative must have an interest in vigorously pursing the claims of the class, and must have no interests antagonistic to the interests of other class members." Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  In addition, class counsel must be "qualified, experienced and able to conduct the litigation." Baffa, 222 F.3d at 60.

This inquiry "serves to uncover conflicts of interest between the parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).  "Not every conflict, however, precludes a finding of adequacy." Sykes, 285 F.R.D. at 287.  "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage." Id. (citation omitted).

"In order to defeat class certification, there must be a showing of a genuine conflict between the proposed class representative's interests and those of the other members of the class, and only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Stinson, 282 F.R.D. at 371 (quoting in part Hirschfeld

v. Stone, 193 F.R.D. 175, 183 (S.D.N.Y. 2000) (internal citation and quotation marks omitted)).

Plaintiffs have carried their burden on this element. As discussed above, the representatives of the class have had their SNAP benefits terminated on the basis of failing to comply with the work rules and received the same or similar allegedly defective notice informing them of such termination. Each named plaintiff has expressed a clear desire to seek prospective injunctive relief from the application of the current notices and the lack of notice regarding ABAWD status, a benefit that will inure to low income New York residents applying for and receiving SNAP benefits in the future.

Further, class counsel have litigation experience in the class action context in federal courts in this Circuit, including matters relating to SNAP assistance. Between the Empire Justice Center and the National Center for Law and Economic Justice, Inc., class counsel contends they have successfully litigated jointly or separately more than one dozen class actions, including cases involving enforcement of SNAP program statutes and regulations.

Accordingly, plaintiffs have demonstrated by a preponderance of the evidence that the representative parties will fairly and adequately protect the interests of the class.

### 3. **Rule 23(b)**

Plaintiffs rely on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared

unlawful only as to all of the class members or as to none of them." <u>Dukes</u>, 564 U.S. at 360.

Here, the members of the class would benefit from the same remedy—an order enjoining

defendants from application of the policies and practices resulting in the deprivations at

issue. <u>Dukes</u>, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or

declaratory judgment would provide relief to each member of the class."). However, there

are two additional hurdles that plaintiffs must clear in order to certify a Rule 23(b)(2) class.

First, they must demonstrate the class is "cohesive." <u>See</u> Newberg on Class Actions

§ 4:34; <u>see also</u> <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 143 (3d Cir. 1998) ("While

23(b)(2) class actions have no predominance or superiority requirements, it is well

established that the class claims must be cohesive."); <u>In re MTBE Prods. Liab. Litig.</u>, 209

F.R.D. 323, 342–43 (S.D.N.Y. 2002). The cohesive requirement is similar to the

commonality requirement under Rule 23(a) and easily satisfied.

Second, plaintiffs must demonstrate class certification is necessary. "Because the

relief available under Rule 23(b)(2) is injunctive and declaratory—rather than monetary—

certification is not always required to secure the rights in question." <u>Laumann v. Nat'l Hockey</u>

<u>League</u>, 105 F. Supp. 3d 384, 396 (S.D.N.Y. 2015). The Second Circuit has explained that

certification under Rule 23(b)(2) is unnecessary when "prospective relief will benefit all

members of a proposed class to such an extent that the certification of a class would not

further the implementation of the judgment." <u>Berger v. Heckler</u>, 771 F.2d 1556, 1566 (2d Cir.

1985) (citing <u>Galvan v. Levine</u>, 490 F.2d 1255, 1261 (2d Cir. 1973)). This principal is typically

reserved for cases where the defendant acknowledges that he or she will apply any relief

obtained by plaintiffs across the board to all members of the proposed class. This is

precisely the case here. Defendant submits that he will apply any relief obtained by plaintiffs

in this action across the board to all members of the proposed class, which defeats the need for formal certification.

Accordingly, plaintiffs have not met their burden on this element.

There is no need to evaluate whether the class is sufficiently ascertainable, as plaintiffs cannot satisfy the Rule 23(b)(2) inquiry. In sum, plaintiffs have not affirmatively demonstrated their compliance with the requirements and their motion for class certification will be denied.

### B. Preliminary Injunction[6]

Plaintiffs seek a preliminary injunction enjoining defendant from terminating the benefits of SNAP recipients and recent applicants on the basis of the three month time limit, unless and until such time as he can demonstrate that the OTDA can implement the work rules consistent with the requirements of due process and federal law by providing: (1) adequate and timely pre-termination notices to recipients, and (2) adequate initial notices of the new work rules to recipients when defendant first determines they are subject to the work rules. Plaintiffs also seek a mandatory preliminary injunction directing the OTDA to resume the issuance of benefits to plaintiffs whose benefits were already terminated for failure to comply with the work rules. Finally, the requested preliminary injunction would also instruct the OTDA to take corrective action on behalf of plaintiffs who are subsequently made known to the OTDA. Plaintiffs request this relief without the posting of a security bond.

---

[6] Plaintiffs also seek a permanent injunction enjoining defendant from terminating their benefits without complying with due process and federal laws by: (1) providing adequate notice of the new requirements and exemptions when defendant determines individuals subject to these rules; (2) providing a fair process for an individualized assessment and determination of whether individuals are exempt or have good cause; (3) providing adequate termination notices to those subject to the time limit; and (4) providing timely and adequate notice of termination based on the rules.

Defendant contends the revised documents, including the Revised NOAA, render the request for preliminary injunctive relief moot.

### 1. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Gen. Mills, Inc. v. Chobani, LLC, 158 F. Supp. 3d 106, 114 (N.D.N.Y. 2016) (quoting Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). "The party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." Reckitt Benckiser Inc. v. Motomco Ltd., 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

As a general matter, the party seeking preliminary relief must show: "(1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest." Gen. Mills, Inc., 158 F. Supp. 3d at 115; see also Chobani, LLC v. Dannon Co., Inc., 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016).

However, in cases like this one, where the movant is not only seeking to restore the *status quo ante* but also requesting an order that commands an affirmative act or mandates a specific course of conduct, a heightened standard applies: this type of preliminary injunction should issue only "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Cacchillo v. Insmed, Inc., 638 F.3d 401, 406 (2d Cir. 2011) (citation omitted); see also N.Y. ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (requiring a "clear" or "substantial" likelihood of success as well as a "strong showing"

of irreparable harm); <u>N.J. v. New York</u>, 872 F. Supp. 2d 204 (E.D.N.Y. 2011) ("This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body such as a school district.").

Moreover, "[e]ven greater caution is appropriate where a federal court is asked to interfere by means of injunctive relief with a state's executive functions, a sphere in which states typically are afforded latitude." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 198 (2d Cir. 2007) (reversing district court's grant of permanent injunctive relief directing New York City defendants to comply with specified provisions of federal and state law as related to food stamp program) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 378 (1976)); <u>see also</u> <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 603 (1975) (requiring federal courts to "abide by standards of restraint that go well beyond those of private equity jurisprudence" when asked to enjoin state officials). "In such cases, we must keep in mind the 'integrity and function' of state institutions, as well as the delicate balance that must be maintained between a federal court's exercise of its equitable power and a state's administration of its own affairs." <u>Reynolds</u>, 506 F.3d at 198 (citing <u>Rizzo</u>, 423 U.S. at 378–80) (internal citations omitted).

Finally, in contrast to the standard applicable to pleadings on a motion to dismiss, the court need not accept all of a plaintiffs' assertions on a motion for preliminary injunction as true. <u>See</u> <u>Sinisgallo v. Town of Islip Hous. Auth.</u>, 865 F. Supp. 2d 307, 331 (E.D.N.Y. 2012). "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted).

## 2. **Likelihood of Success**

Plaintiffs' causes of action can be easily categorized into two types of claims: (1) Fourteenth Amendment due process claims, and (2) statutory violations (of the SNAP Act and implementing regulations). Plaintiffs assert defendant has failed to provide due process and comply with federal law at two different critical points in the receipt of SNAP benefits: (1) when a SNAP recipient is first determined to be an ABAWD and thus mandated to comply with the work rules or face the start of the three month clock, and (2) when an ABAWD SNAP recipient receives notice that benefits will be terminated for failure to comply with the work rules.

As to how these claims and determinations relate to the two documents at issue here—the Notice of ABAWD Status and the NOAA—with regards to the first scenario, plaintiffs contend the December 2015 Notice of ABAWD Status was inadequate to notify alleged ABAWDs of their impending work requirements and further, some never received the Notice of ABAWD Status or any written notice of their ABAWD status and corresponding work rules. With respect to the second scenario described, plaintiffs contend the NOAA used by defendant was inadequate to alert allegedly non-compliant ABAWDs of their upcoming termination of benefits and further, some NOAAs were untimely in addition to being inadequate.

Plaintiffs assert the following specific claims:

First, plaintiffs allege that defendant's policy and practice of failing to provide adequate pre-termination notice to individual ABAWDs violates the Due Process Clause of the Fourteenth Amendment, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R.

§ 273.13(a)(2), and 7 U.S.C. § 2014(a). Simply stated, that the NOAA sent to plaintiffs provided insufficient due process and violated the governing federal laws.

Second, they allege that defendant's policy and practice of failing to provide adequate and timely notice of termination (mailed 10 days before effective date) violates the Due Process Clause, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1)-(2), and 7 U.S.C. § 2014(a). Put another way, the inadequate NOAA was also untimely as to plaintiff DeMeco, violating his due process rights and the governing federal laws.

Third, plaintiffs allege that defendant's policy and practice of failing to provide adequate notice of ABAWD work rules and time limits, available exemptions, and good cause provisions to alleged ABAWDs upon expiration of the waiver on January 1, 2016 or when defendant first determined individuals subject to the new rules, violates the Due Process Clause, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1), 7 U.S.C. § 2015(o)(3) and its implementing regulation 7 C.F.R. § 273.24(b)(2), and 7 U.S.C. § 2014(a). In other words, the Notice of ABAWD Status—the notice provided to alleged ABAWDs when the waiver was set to expire, informing them that they were classified as such and subject to the work rules—provided insufficient due process and violated the governing federal laws.

Fourth, they allege defendant's policy and practice of failing to provide any initial written notice to individuals when they are first determined to be subject to the ABAWD rules and time limits, including information about the rules and time limits, available exemptions, and good cause provisions, violates the Due Process Clause, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1), 7 U.S.C. § 2015(o)(3) and its implementing

regulation 7 C.F.R. § 273.24(b)(2), and 7 U.S.C. § 2014(a). Simply put, some alleged ABAWDs subject to the expiration of the waiver never received any written notice of their ABAWD classification and corresponding requirement to comply with the work rules, in violation of their due process rights and governing federal laws.

Fifth and finally, plaintiffs allege defendant's policy and practice of terminating ABAWDs without a fair process to individually assess and determine whether an individual qualifies for an exemption from the work rules when defendant first identifies a person as potentially subject to the work rule violates the Due Process Clause, 7 U.S.C. § 2015(o) and its implementing regulation 7 C.F.R. § 273.24, and 7 U.S.C. § 2014(a). Put simply, plaintiffs contend that the current method by which defendant identifies and notifies, or doesn't notify, alleged ABAWDs that they will be subject to the work rules and the three month clock will start running, violates their due process rights and is in contravention of the SNAP Act and its implementing regulations.

### a. Fourteenth Amendment

Turning to the first category of claims, the Due Process Clause of the Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." Singh v. Joshi, 152 F. Supp. 3d 112, 124 (E.D.N.Y. 2016) (quoting Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011)).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"

Singh, 152 F. Supp. 3d at 124 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).  "'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings,' but an opportunity to be heard remains the Due Process Clause's 'root requirement.'"  Id. (quoting Boddie v. Connecticut, 401 U.S. 371, 378–79 (1971)).

Plaintiffs assert a constitutionally protected property interest in the continued receipt of SNAP benefits under the SNAP Act.  They contend they were deprived of this property interest without adequate due process when the waiver was set to expire, an initial status determination was made by defendant that they were ABAWDs subject to the work rules (which in turn began the three month ABAWD time clock), and they were not provided adequate notice of such.  Specifically, plaintiffs Brooks and DeMeco never received the Notice of ABAWD Status which they claim would have informed them of the work rules and relevant information regarding exemptions and exceptions.  Plaintiff Blowers received the Notice of ABAWD Status but contends it failed to provide adequate notice of the work rules and time limits and failed to provide an opportunity for a fair process to make an individual assessment of his status and/or challenge that determination.  Defendant contends plaintiffs have no protected property interest in an initial status determination notice because there is no agency action and therefore a Fourteenth Amendment claim must fail.

Plaintiffs assert they were also deprived of a protected property interest without adequate due process when they were notified of their impending benefit termination via the allegedly defective NOAA.  Further, plaintiff DeMeco received not only an inadequate NOAA, but one that was untimely as well.  Defendant responds that plaintiffs, who were determined to be ABAWDs non-compliant with the work rules, have no protected property interest in their

continued SNAP benefits and therefore a Fourteenth Amendment claim must fail.

Alternatively, defendant argues that even if plaintiffs have a property interest, sufficient due

process was provided.

The Supreme Court has "long held that procedural due process protections 'attach

where state or federal law confers an entitlement to benefits.'" Barrows v. Burwell, 777 F.3d

106, 113 (2d Cir. 2015) (quoting Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) (citation

omitted)); Kraemer v. Heckler, 737 F.2d 214, 222 (2d Cir. 1984). "In order for a benefit to

qualify as a property interest, the person claiming it must have a 'legitimate claim of

entitlement' to the benefit, rather than a mere 'unilateral expectation of it.'" Handberry v.

Thompson, 446 F.3d 335, 353 (2d Cir. 2006) (quoting Bd. of Regents v. Roth, 408 U.S. 564,

577 (1972)). "In determining whether a party has a legitimate claim to a benefit, 'we look to

the statutes and regulations governing the distribution of benefits.'" Id. (quoting Kapps, 404

F.3d at 113). In other words, a property interest exists where "the relevant statutes and

regulations 'meaningfully channel[ ] official discretion by mandating a defined administrative

outcome.'" Id. (quoting Sealed v. Sealed, 332 F.3d 51, 56 (2d Cir. 2003)).

Thus, to the extent that state or federal law "meaningfully channels" the discretion of

state or local officials by mandating an award of SNAP benefits to applicants who satisfy

prescribed eligibility criteria, plaintiffs possess a property interest protected by the Due

Process Clause of the Fourteenth Amendment. In fact, it is well-settled that plaintiffs have a

protected property interest in the continued receipt of their SNAP benefits. The Supreme

Court has held:

> Food-stamp benefits, like the welfare benefits at issue in Goldberg v. Kelly, 397
> U.S. 254 (1970) "are a matter of statutory entitlement for persons qualified to
> receive them." Such entitlements are appropriately treated as a form of

"property" protected by the Due Process Clause; accordingly, the procedures
that are employed in determining whether an individual may continue to participate in the statu

Atkins v. Parker, 472 U.S. 115, 128–29 (1985) (citations omitted) (quoting Goldberg, 397

U.S. at 262–63) (procedural due process applies to the termination of welfare benefits

because they are "a matter of statutory entitlement for persons qualified to receive them"))

As plaintiffs have a legitimate claim of entitlement to continued receipt of SNAP

benefits and therefore a protected property interest entitling them to pre-termination process,

the analysis turns to what process is due before plaintiffs can be deprived of that interest.

Sealed, 332 F.3d at 55.  "The essential requirements of due process . . . are notice and an

opportunity to respond."  Loudermill, 470 U.S. at 546; see also LaChance, 522 U.S. at 266

(1998) ("The core of due process is the right to notice and a meaningful opportunity to be

heard." (quotations and citation omitted)).

### i. ABAWD "Classification"

"Governmental action may be challenged as a violation of due process only when it

may be shown that it deprives a litigant of a property or a liberty interest."  DeMartino v. N.Y.

State Dep't of Labor, 167 F. Supp. 3d 342, 357 (E.D.N.Y. 2016) (quotations omitted).  The

Notice of ABAWD Status merely reminded households about existing ABAWD requirements

(the work rules) which had been previously communicated to all SNAP households even

before the waiver was set to expire.  In other words, it merely alerted recipients to their

classification as an ABAWD.  A deprivation of due process rights requires a government

infringement of a protected property interest.  At that time, no infringement took place.  There

is no need to discuss whether the content of the Notice of ABAWD Status provided sufficient

due process because plaintiffs have not alleged a deprivation of a property interest.

Because there was no deprivation when plaintiffs were determined by defendant to be ABAWDs or upon receipt of the Notice of ABAWD Status in December 2015, plaintiffs have not established that they are substantially likely to succeed on the merits of the due process violations alleged in the <u>Third</u>, <u>Fourth</u>, and <u>Fifth</u> causes of action.

### ii. **Benefit Termination**[7]

On the other hand, the NOAA sent alerting plaintiffs of their impending loss of benefits is exactly the type of deprivation of a property interest entitled to due process. As noted, plaintiffs have a protected property interest in their continued receipt of SNAP benefits. The question turns to what notice and opportunity were due and whether the NOAA complied with required standards. Plaintiffs contend the NOAA lacked the requisite due process, but had it not, they would have had the information necessary to comprehend the predicate facts and reasons for defendant's decision to terminate their benefits, thus enabling them to meaningfully exercise their right to a fair hearing.

### (1). **Notice**

"In order to be constitutionally adequate, notice of benefits determinations must provide claimants with enough information to understand the reasons for the agency's action." <u>Kapps</u>, 404 F.3d at 123–24; <u>see also</u> <u>Hart v. Westchester Cnty. Dep't of Social Servs.</u>, 160 F. Supp. 2d 570, 575 (S.D.N.Y. 2001) ("[A] public welfare recipient must be given information sufficient to avail him of the opportunity to defend the impending termination of his benefits."); <u>Ford v. Shalala</u>, 87 F. Supp. 2d 163, 178 (E.D.N.Y. 1999) ("In order to enlist the effective support of the party most interested in correcting errors, a notice must 'detail the

---

[7] Only the NOAA is analyzed here, as no current representative plaintiff has had benefits terminated after receiving the Revised NOAA. Therefore no determination is made here as to the procedural due process provided by the Revised NOAA.

reasons for the proposed termination' so the recipient is able to determine whether the intended action 'rests on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of the particular case.'" (quoting Goldberg, 397 U.S. at 267–68)). "Claimants cannot know *whether* a challenge to an agency's action is warranted, much less formulate an effective challenge, if they are not provided with sufficient information to understand the basis for the agency's action." Kapps, 404 F.3d at 124 (emphasis in original).

However, "the specific type of notice required will vary depending on the circumstances of each given case." Id. In determining what process is due, courts apply the test set by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "Under Mathews, three factors guide [a court's] decision: 1) the private interest affected; 2) the risk of erroneous deprivation, and the probable value, if any, 'of additional or substitute procedural safeguards'; and 3) the government's interest, which may include the fiscal and administrative burdens that additional procedures would impose." Kapps, 404 F.3d at 118 (quoting Mathews, 424 U.S. at 335). "The due process clause does not guarantee any particular form of procedure, it protects substantive rights." Prince v. Dep't of Soc. Servs. of Oneida Cnty., No. 616CV440DNHATB, 2016 WL 3526071, at *11 (N.D.N.Y. May 5, 2016) (Baxter, M.J.) (Report & Recommendation), adopted by, No. 616CV0440DNHATB, 2016 WL 3546358 (N.D.N.Y. June 23, 2016).

Under the Mathews test, the importance of plaintiffs' SNAP benefits is high and their interest in continuing or regaining eligibility for benefits as well as having restored the full amount of any benefits withheld by the State of New York is substantial. According to plaintiffs, the risk of erroneous deprivation is high. Where a notice reducing or terminating benefits is so general that it does not provide any information on which to base a challenge,

the risk of erroneous deprivation is high.  <u>See e.g.</u>, <u>Ellender v. Schweiker</u>, 575 F. Supp. 590, 602 (S.D.N.Y. 1983) (finding the risk of error was "undoubtedly [] substantial" where the notice received was "so vague that the plaintiffs did not have any evidence on which to base a challenge").  Additional safeguards could have value yet also run the risk of confusing an individual with additional information.  The burden on the government to provide additional information is seemingly low.

The NOAA explains that benefits will be terminated due to the recipient's identification as an ABAWD and their failure to meet the listed ABAWD work rules.  It does not identify which specific work-related requirement the recipient has allegedly failed to complete, *e.g.*, failing to work 80 hours per month, even though plaintiffs contend defendant has the capability to provide such individualized information by way of their computer system.  Due process requires that the reason for the deprivation be identified such that a claimant may challenge the action.  The NOAA does not state  the specific *reason* for discontinuing benefits.  Without the specific reason included, a claimant is left guessing as to what evidence can or should be submitted in response to challenge the determination.  While due process does not require that every conceivable exception or exemption to a deprivation be contained in a notice, the notice must provide enough information sufficient to avail him or her of the opportunity to defend the impending termination of benefits.

Plaintiffs have alleged facts which, accepted as true, establish that the NOAA does not state in plain, understandable language the specific *reason* for discontinuing benefits; fails to inform the recipient of applicable exemptions; and fails to provide information about the good cause provision and therefore does not provide to plaintiffs the notice required by the Due Process Clause.

### (2). **Opportunity to Be Heard**

The opportunity to be heard "must be at a meaningful time and [conducted] in a meaningful manner." Goldberg, 397 U.S. at 267 (internal quotation marks omitted).

Plaintiffs contend the NOAA did not provide any information on which to base a challenge to the adverse action. To the contrary, on the first page of the NOAA is stated: "IF YOU DO NOT AGREE WITH ANY DECISION EXPLAINED IN THIS NOTICE, YOU HAVE A RIGHT TO ASK US FOR A CONFERENCE AND/OR ASK THE STATE FOR A FAIR HEARING. READ THE CONFERENCE AND/OR FAIR HEARING SECTION TO SEE HOW TO ASK FOR A CONFERENCE AND/OR A FAIR HEARING." The third page provides: "If you think our decision was wrong, you can request a review of our decision. If we made a mistake, we will correct it. You can do both of the following" ask for a conference and ask for a hearing]." The following two pages contain information about Conference and Fair Hearing rights and how to access them.

However, being heard at a meaningful time means nothing if the opportunity to be heard is not conducted in a meaningful manner. For example, if the claimant has no knowledge of what to base his or her objections on given that the exemptions and good cause exceptions are not detailed in the NOAA. Further, plaintiff DeMeco received his NOAA *after* the effective date of the termination of his benefits. Receiving notice of a deprivation, even adequate notice, after the time has passed to be heard, would not comply with due process. Plaintiffs have alleged facts which, accepted as true, establish that the NOAA fails to provide a meaningful opportunity to be heard following the deprivation of a protected property interest.

Taking into consideration the Mathews factors, the kind of notice and opportunity to be heard that due process requires, and the information contained in the NOAA, plaintiffs have established that they are substantially likely to succeed on the merits of the due process violations alleged in the First and Second causes of action.

**b. SNAP Act and Regulations**

Turning to the second category of claims, plaintiffs bring these claims against defendant pursuant to 42 U.S.C. § 1983 to enforce multiple provisions of the SNAP Act and its implementing regulations.[8]  To assert a claim under § 1983, plaintiffs must allege they were deprived "of any rights, privileges, or immunities secured by the . . . laws" by a person acting under color of state law.  There is no doubt defendant has acted under color of state law, and plaintiffs assert they were deprived of rights and privileges conferred by the SNAP Act and its implementing regulations.  The question thus is whether they have asserted sufficient facts to support the alleged violations.

**i. ABAWD "Classification"**

---

[8]  Although the parties do not argue whether the SNAP Act authorizes a private right of action, the Second Circuit has held that certain SNAP provisions are enforceable by private cause of action under § 1983.  See Briggs v. Bremby, 792 F.3d 239, 241-46 (2d Cir. 2015) (concluding that the time limits for allocating food stamps provided in 7 U.S.C. § 2020[e][3] and [9] are privately enforceable through lawsuits pursuant to § 1983).  An analysis under Blessing v. Freestone, 520 U.S. 329 (1997), of the SNAP provisions now at issue, would likely yield the same result found by the Briggs Court, but the issue has not been raised.  See Gilmore v. Bouboulis, No. 315CV0686GTSDEP, 2016 WL 4532146, at *1 (N.D.N.Y. Aug. 29, 2016) (Suddaby, C.J.).  Conversely, one First Circuit district court found that "the SNAP Act and its implementing regulations do not afford a private right of action."  Trefry v. Tracy, No. 1:14-CV-00044-NT, 2014 WL 2154263, at *4 (D. Me. May 22, 2014), aff'd (June 25, 2015) ("[T]he SNAP Act does not authorize this Court to exercise jurisdiction over Plaintiff's private action seeking a change in federal and state food stamp policy.").

Specifically, plaintiff Blowers asserts that the Notice of ABAWD Status he received violates the SNAP Act and regulations because it failed to notify him that he had been individually assessed and determined to be subject to ABAWD work rules, apprise him of the requirements of the work rules, including how he could demonstrate compliance, inform him about exemptions and how they could be claimed, and afford him an opportunity to challenge the determination of ABAWD status. Likewise, plaintiffs Brooks and DeMeco allege they were deprived of these same privileges guaranteed by the SNAP Act and regulations when they failed to receive any written notice at all that they had been found to be ABAWDs. Plaintiffs also collectively contend that defendant failed to provide an individualized inquiry into determining whether they qualified for any exemptions at the time they were determined to be ABAWDs, in violation of the SNAP Act and regulations. They contend they are likely to succeed on these claims because the Notice of ABAWD Status was misleading, inaccurate, and incomplete.

First, 7 U.S.C. § 2015 (o)(2) explicitly limits assessment of status determination to each individual. The statute provides that an "individual as a member of [a] household" is ineligible for SNAP only where the individual is non-exempt and does not meet statutorily prescribed work rules. 7 U.S.C. § 2015 (o)(2). Plaintiffs allege that the Notice of ABAWD Status fails to meet this requirement because it asserts "that everyone in [a] SNAP household [must] be exempt from [work] requirements" in order to claim an exemption.

Second, 7 U.S.C. § 2015 (o)(5) expressly allows a recipient to regain eligibility "if, during a 30-day period," he or she meets prescribed work requirements. Plaintiffs allege that the Notice of ABAWD Status states that the recipient "may be able to receive SNAP again if otherwise eligible and should contact the social services district to discuss what he/she

needs to do . . . ."  The statute does not condition regaining eligibility on having a discussion with defendant's staff or agents, but plaintiffs assert that the Notice of ABAWD Status does, in violation of federal law.

Third, 7 C.F.R. § 273.15(f) affords the benefit recipient the right to "express to the [defendant his] disagree[ment] with its [determination]" that he is an ABAWD subject to work rules.  Plaintiffs assert that defendant's failure to identify the facts upon which he based his ABAWD or non-exempt status determination contravenes the right conferred in the statute.  Similarly, those plaintiffs who wholly failed to receive any notice were also deprived of this right.

Fourth, 7 U.S.C. § 2020 (e)(10) and 7 C.F.R. § 273.15(a) require that the recipient be notified of his or her right to request a fair hearing to grieve an "action of the State agency which affects [his] participation in the Program."  According to plaintiffs, the Notice of ABAWD Status fails to include this required notification, and the plaintiffs who received no notice at all were not appraised of this right.

While plaintiffs may not be able to establish a likelihood of success on their claims that the Notice of ABAWD Status violated their Fourteenth Amendment rights, they fare better pursuing violations of federal statutory law.

Accordingly, plaintiffs have established that they are substantially likely to succeed on the merits of the statutory violations alleged in the <u>Third</u>, <u>Fourth</u>, and <u>Fifth</u> causes of action.

### ii.  Benefit Termination

Plaintiffs argue the inadequate NOAA deprived them of the rights and protections guaranteed to them by the SNAP Act and regulations.  They contend the NOAA violates federal law because it is a boiler plate, non-specific NOAA that fails to explain the reasons for

denial or termination of benefits and what recipients must do to lift disqualification.  Further, the NOAA sent to at least one plaintiff was untimely in violation of the governing statute. They contend the NOAA violates federal law in five concrete ways:  (1) it fails to state in plain and easily understandable language the specific reason for discontinuing a recipient's benefit; (2) it fails to inform the recipient of the applicable exemptions, how to qualify, and how to claim one; (3) it fails to inform the recipient of the good cause provision; (4) it fails to specifically identify which months count for ABAWD tracking purposes; and (5) it fails to detail how to regain eligibility for benefits.[9]

According to plaintiffs, the boiler-plate NOAA, in lieu of specific information targeted to the intended recipient, is insufficient because it states only that:  "[Y]our SNAP benefits will be DISCONTINUED . . . . This is because you are an able bodied adult ("ABAWD") who is not in a Supplemental Nutrition Assistance Program household containing a member under 18 years of age and may only receive SNAP benefits for three months in a 36 month period . . . ."  Brooks Decl., ¶ 12; Brooks Decl., Ex. 1 (emphasis in original).

First, 7 C.F.R. § 273.13 (a)(2) provides:

The notice of adverse action shall be considered adequate if it explains in easily understandable language:  The proposed action; the reason for the proposed action; the household's right to request a fair hearing; the telephone number of the food stamp office (toll-free number or a number where collect calls will be accepted for households outside the local calling area) and, if possible, the name of the person to contact for additional information; the availability of continued benefits; and the liability of the household for any overissuances received while awaiting a fair hearing if the hearing official's decision is adverse to the household.

---

[9]  The Complaint enumerates these five deficiencies while the motion for preliminary injunction identifies three substantive deficiencies.

According to plaintiffs, the NOAA fails to state in plain language the specific *reason* for discontinuing a recipient's benefits. Instead, the NOAA catalogues five work related requirements, all or any of which it purports that the recipient did not satisfy. Thus, the NOAA does not inform the recipient whether he or she failed to work 80 hours per month, participate in an employment training program, or engage in permissible volunteer work to meet the work hours mandated under 7 U.S.C. § 2015(o)(2).

Further, 7 C.F.R. § 273.7(f)(1)(ii) requires that:

The notice of adverse action must contain the particular act of noncompliance committed and the proposed period of disqualification. The notice must also specify that the individual may, if appropriate, reapply at the end of the disqualification period. Information must be included on or with the notice describing the action that can be taken to avoid the disqualification before the disqualification period begins. The disqualification period must begin with the first month following the expiration of the 10-day adverse notice period, unless a fair hearing is requested.

Plaintiffs allege the failure to explicitly identify the work requirement with which the recipient did not comply also infringes on the recipient's ability to rebut or cure the alleged noncompliance. Moreover, the NOAA compounds the failure to identify the specific violation by stating "the action [that the plaintiffs] can take to avoid [discontinuation]" of benefits.

Second, 7 U.S.C. § 2015 (o)(3) lists the following individuals as excepted from the work rules: "(A) under 18 or over 50 years of age; (B) medically certified as physically or mentally unfit for employment; (C) a parent or other member of a household with responsibility for a dependent child; (D) otherwise exempt under subsection (d)(2); or (E) a pregnant woman." Similarly, the implementing regulation, 7 C.F.R. § 273.24 (c)(1)–(6), provides the exemptions:

The time limit does not apply to an individual if he or she is:

- 43 -

(1) Under 18 or 50 years of age or older;

(2) Determined by the State agency to be medically certified as physically or mentally unfit for employment. An individual is medically certified as physically or mentally unfit for employment if he or she:

(i) Is receiving temporary or permanent disability benefits issued by governmental or private sources;

(ii) Is obviously mentally or physically unfit for employment as determined by the State agency; or

(iii) If the unfitness is not obvious, provides a statement from a physician, physician's assistant, nurse, nurse practitioner, designated representative of the physician's office, a licensed or certified psychologist, a social worker, or any other medical personnel the State agency determines appropriate, that he or she is physically or mentally unfit for employment.

(3) Is a parent (natural, adoptive, or step) of a household member under age 18, even if the household member who is under 18 is not himself eligible for food stamps;

(4) Is residing in a household where a household member is under age 18, even if the household member who is under 18 is not himself eligible for food stamps;

(5) Is otherwise exempt from work requirements under section 6(d)(2) of the Food Stamp Act, as implemented in regulations at § 273.7(b); or

(6) Is pregnant.

According to plaintiffs, the NOAA fails to identify the applicable exemptions, how to qualify for them, and the process by which they can be claimed.  They contend that had they been advised of this information, plaintiff Blowers who suffers from a sleep condition and other health problems that cause him extreme fatigue and severe headaches which render him physically unfit for work, could have availed himself of the unfit for work exemption.  Blowers Decl., ¶ 4.  Similarly, plaintiff Brooks, also a person with limited ability to work in light of his medical condition, could have claimed the unfit for work exemption.  Brooks Decl., ¶ 10.

Third, 7 C.F.R. § 273.24 (b)(2) provides the good cause exceptions:

> Good cause. As determined by the State agency, if an individual would have worked an average of 20 hours per week but missed some work for good cause, the individual shall be considered to have met the work requirement if the absence from work is temporary and the individual retains his or her job. Good cause shall include circumstances beyond the individual's control, such as, but not limited to, illness, illness of another household member requiring the presence of the member, a household emergency, or the unavailability of transportation.

Plaintiffs assert that the NOAA fails to inform them that they may claim "good cause" for temporary noncompliance with the work rules.  For example, the NOAA does not indicate to the recipient that he or she may be excused from work activities for an illness or illness of another household member requiring the presence of the member.  Given that plaintiff DeMeco is the primary caretaker of his father who is ill with pancreatic cancer, he likely could have sought a temporary good cause exception to the work rules.  DeMeco Decl., ¶¶ 5–9.

Fourth, 7 C.F.R. § 273.13 (a)(1) requires timely notice of a NOAA.  Specifically:

> The notice of adverse action shall be considered timely if the advance notice period conforms to that period of time defined by the State agency as an adequate notice period for its public assistance caseload, provided that the period includes at least 10 days from the date the notice is mailed to the date upon which the action becomes effective. Also, if the adverse notice period ends on a weekend or holiday, and a request for a fair hearing and continuation of benefits is received the day after the weekend or holiday, the State agency shall consider the request timely received.

Plaintiff DeMeco's NOAA was not sent at least 10 days prior to the effective date of his termination of benefits; instead it is dated the same day it became effective—June 17, 2016. DeMeco Decl., ¶ 17.  Moreover, 7 C.F.R. § 273.15(k)(1) mandates the continuation of benefits:

> If a household requests a fair hearing within the period provided by the notice of adverse action, as set forth in § 273.13, and its certification period has not expired, the household's participation in the program shall be continued on the

basis authorized immediately prior to the notice of adverse action, unless the household specifically waives continuation of benefits.

Plaintiff DeMeco contends that because he did not receive the NOAA at least 10 days before the effective date, he was denied the opportunity for his benefits to continue pending an appeal.

For these reasons, plaintiffs have established that they are substantially likely to succeed on the merits of the statutory violations alleged in the First and Second causes of action.

### 3. Irreparable Harm

Plaintiffs contend they suffer irreparable harm when they are unlawfully deprived of SNAP benefits. They argue that without benefits, they are unable to purchase food for themselves and their families, threatening their safety and well-being.

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." Weinstein v. Krumpter, 120 F. Supp. 3d 289, 297 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). "The concept of irreparable harm has been described 'as certain and imminent harm for which a monetary award does not adequately compensate.'" Donohue v. Mangano, 886 F. Supp. 2d 126, 149–50 (E.D.N.Y. 2012) (quoting Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113–14 (2d Cir. 2003)). "[T]he moving party must establish that without the preliminary injunction, he will suffer an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Amaker v. Fischer, No. 10-CV-0977A, 2012 W L 8020777, at *2 (W.D.N.Y. Sept. 28, 2012). Conclusory

assertions lacking supporting evidence will not support a preliminary injunction.  Hancock v. Essential Res., Inc., 792 F. Supp. 924, 928 (S.D.N.Y. 1992).

The alleged violation of a constitutional right may alone satisfy a plaintiff's burden to demonstrate irreparable harm.  Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996).  Many courts have found a presumption of irreparable harm where, as here, there is an alleged deprivation of constitutional rights.  See Smith v. Fredrico, No. No. 12–cv–04408, 2013 WL 122954, *6 (E.D.N.Y. Jan. 8, 2013) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)).  However, that presumption is not without limits.  Caselaw largely supports the finding of irreparable injury per se when a constitutional deprivation is alleged only where the protected right has been personal and the violation non-compensable.  Smith, 2013 WL 122954, at *7.  It follows that when "personal" constitutional rights are violated yet the harm that follows from the violation is compensable, the damage is not irreparable.

First, to the extent plaintiffs' alleged harm is any discontinuance of benefits due to an ABAWD's actual failure to comply with the work rules, that is a challenge appropriately directed to the USDA, the agency that promulgates the regulations under the SNAP Act. With respect to the alleged harm flowing from the lack of due process and statutory protections, any harm to recipients whose benefits are discontinued based on being a non-compliant ABAWD is cut by the fact that they can immediately reestablish eligibility by reapplying for benefits and complying with work rules.[10]

---

[10]  In fact, since initiation of this action, plaintiff Brooks reapplied for SNAP benefits and successfully reestablished his eligibility in the County of Schenectady on or about September 20, 2016.  He is currently receiving SNAP benefits.  Plaintiffs DeMeco and Blowers, to the extent they claim they are eligible for exemptions from the work rule, could regain eligibility through the reapplication process.

Plaintiffs have not established that they will suffer irreparable harm in the absence of the grant of a preliminary junction.

Accordingly, this element weighs against granting a preliminary injunction.

### 4. **Public Interest and Balance of Hardships**

As plaintiffs cannot show irreparable harm, there is no need to consider whether the public interest supports the granting of preliminary injunction or whether a balance of hardships tips in plaintiffs' favor.

For these reasons, plaintiffs have failed to establish they are entitled to a preliminary injunction granting the requested relief and therefore their motion for such will be denied.

### C. **Failure to Name a Necessary Party**

### 1. **Legal Standard**

Rule 12(b)(7) provides a mechanism for dismissal where the plaintiff has failed to join a party required by Rule 19. FED. R. CIV. P. 12(b)(7). Under Rule 19, a court determining whether dismissal is warranted must first examine whether the absent party is required in the suit. FED. R. CIV. P. 19(a). A person is "required" under Rule 19 if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the persons' ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED R. CIV. P. 19(a)(1).

If the absent party meets one or more of these requirements but cannot be joined for jurisdictional or other reasons, the court must then determine whether the absent party is "indispensable" under Rule 19(b). <u>Fed. Ins. Co. v. SafeNet, Inc.</u>, 758 F. Supp. 2d 251, 257–59 (S.D.N.Y. 2010) (discussing Rule 19 analysis). "To be clear, a party cannot be indispensable, and a case cannot be dismissed for failure to join an indispensable party, unless it is a required party under Rule 19(a)." <u>Id</u>. at 259.

Defendant argues the USDA is a required party because the complete relief requested by plaintiffs requires the addition of the federal agency that administers and fully funds the SNAP program in New York, and to leave it out would dangerously prejudice its rights. According to defendant, if plaintiffs' requested relief is granted, it would compel the OTDA to cease enforcing federal SNAP laws and authorize federal SNAP benefits to individuals who are, by definition, ineligible. Therefore, defendant contends the USDA is the only entity authorized to grant the relief plaintiffs seek and are thus a required party.

This argument is without merit. The USDA is not a necessary party because plaintiffs are not challenging any actions or policies of the USDA. Plaintiffs are not contesting the ABAWD eligibility criteria established by the USDA or the rules for states to implement them; instead they contend the OTDA is not following the existing rules and federal statutes. To address defendant's concern that the OTDA may issue benefits to ineligible recipients while a preliminary injunction is in place, the remedy would be to recover benefits improperly issued. Therefore, it is possible to award all of the relief sought by plaintiffs without joining the USDA.

Accordingly, defendant's motion to dismiss on this basis is rejected.

**D. Failure to State a Claim**

**1. Legal Standard**

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' FED. R. CIV. P. 8(a)(2), more than mere conclusions are required.  "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.).  In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

However, in some cases, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of

consideration on a motion to dismiss." Goel, 820 F.3d at 559. A document is only "integral" to the complaint "where it relies heavily upon its terms and effect." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### 2. Fourteenth Amendment

### a. ABAWD "Classification"

As explained above in determining whether plaintiffs have established a substantial likelihood of success on the merits, to plausibly allege a due process violation, plaintiffs must assert that they were deprived of a protected property interest without sufficient process.

Plaintiff Blowers cannot state a claim that his due process rights were violated when he received the allegedly defective Notice of ABAWD Status in December 2015 because even taking all of plaintiffs' allegations as true and drawing every reasonable inference in their favor at this early stage, he was not deprived of any protected property interest at that time. Therefore, the due process claim asserted in the Third cause of action will be dismissed. Likewise, plaintiffs Brooks and DeMeco cannot state a claim that their due process rights were violated when they failed to receive the Notice of ABAWD Status in December 2015 or any other initial written notice when they were first determined to be subject to the ABAWD rules and time limits, because they have not raised their right to relief above the speculative level as they were not deprived of any protected property interest at that time. Therefore, the due process claim asserted in the Fourth cause of action will be dismissed. Similarly, plaintiffs cannot state a claim that their due process rights were violated when defendant failed, at the time they were identified to be ABAWDs, to provide a fair process to individually assess and determine whether they qualified for an exemption from the work rules. They have only provided legal conclusions that they were deprived of any

protected property interest at that time, without due process.  Therefore, the due process claim asserted in the Fifth cause of action will be dismissed.

Accordingly, those portions of the Third, Fourth, and Fifth causes of action asserting due process violations will be dismissed for failure to state a claim.

### b. Benefit Termination

Again, to assert a procedural due process violation under the Fourteenth Amendment, plaintiffs must allege that they were deprived, by defendant, of a protected property interest without due process.

As detailed in the preliminary injunction discussion, plaintiffs have alleged facts which, accepted as true, demonstrate they possessed a protected property interest in their SNAP benefits and were entitled to procedural due process before they were deprived of those benefits by defendant.  They have plausibly alleged that they were provided insufficient process when they received an inadequate NOAA which did not contain the necessary information to serve as a proper notice.  The facts paint a picture of confusion as to why their benefits were being terminated and a further lack of understanding regarding how to change that outcome, whether by claiming an exemption, a temporary good cause exception, requesting a hearing or conference, or reapplying for benefits.  They have alleged facts regarding the lack of notice and opportunity to be heard which raise their right to relief above a speculative level.  Further, plaintiff DeMeco has alleged that the NOAA he received was not only inadequate but also untimely, and thus he was provided even less due process. Because plaintiffs have alleged plausible claims for relief, their claims that the NOAA violated the Due Process Clause may proceed.

Accordingly, those portions of the <u>First</u> and <u>Second</u> causes of action asserting due process violations will remain.

### 3. **SNAP Act and Regulations**

### a. **ABAWD "Classification"**

As detailed above, plaintiffs have established a substantial likelihood that they will succeed on their claims that the Notice of ABAWD Status and failure of any written notice to some plaintiffs violated the SNAP Act and accompanying regulations. As the motion to dismiss standard is even less demanding on plaintiffs, and they need only make a claim of plausibility, they have sufficiently stated statutory violates based on the Notice of ABAWD Status.

Accordingly, those portions of the <u>Third</u>, <u>Fourth</u>, and <u>Fifth</u> causes of action asserting statutory violations will remain.

### b. **Benefit Termination**

Finally, plaintiffs have sufficiently alleged violations of the SNAP Act and implementing regulations based on the NOAAs they received. According to plaintiffs, they did not understand in plain language why their benefits were being terminated or how to proceed. Further, they contend the NOAAs failed to include all of the information required by statute. Additionally, plaintiff DeMeco has certainly stated a claim that his NOAA was untimely, in direct violation of federal law.

Therefore, those portions of the <u>First</u> and <u>Second</u> causes of action asserting statutory violations will remain.

Accordingly, defendant's motion to dismiss for failure to state a claim will be granted in part and denied in part.

## IV. **CONCLUSION**

Plaintiffs have failed to affirmatively demonstrated compliance with Rule 23's requirements and therefore their motion for class certification will be denied.

As plaintiffs can show no irreparable harm that would result from the denial of their request for a preliminary injunction, the motion for a preliminary injunction will be denied.

Further, defendant has failed to show that the USDA is a necessary party and thus his motion to dismiss for failure to join a necessary party will be denied.

Finally, plaintiffs cannot plausibly state a claim that their due process rights were violation when defendant classified them as ABAWDs, issued the allegedly defective Notice of ABAWD Status to plaintiff Blowers, failed to notify plaintiffs Brooks and DeMeco in writing of their classification, or failed to provide an individualized inquiry whereby plaintiffs would be screened for an exemption. This is so because plaintiffs were not deprived of any protected property interest at that time. Therefore, the due process claims asserted in the Third, Fourth, and Fifth causes of action will be dismissed.

Plaintiffs have however, asserted sufficient facts to proceed with the First and Second causes of action as alleged, and part of the Third, Fourth, and Fifth causes of action. They have asserted particular facts that, when taken as true, make out a plausible claim that the NOAA was inadequate (First claim) and in one instance also untimely (Second claim), in violation of the Due Process Clause of the Fourteenth Amendment and the SNAP Act and its implementing regulations. Therefore, those claims will remain in their entirety. They have also asserted factual allegations in the Third, Fourth, and Fifth causes of action that raise their right to relief under the SNAP Act and regulations above the speculative level. Taken as true, they have alleged facts suggesting that defendant violated the SNAP Act and its

regulations by mailing an inadequate Notice of ABAWD Status to plaintiff Blowers, failing to send any written notice of same to plaintiffs Brooks and DeMeco, and failing to individually determine applicable exemptions for each plaintiff. Accordingly, defendant's motion to dismiss for failure to state a claim will be granted in part and denied in part.

Therefore, it is

## V. **ORDERED that**

1. Plaintiffs' motion for class certification is DENIED;

2. Plaintiffs' motion for a preliminary injunction is DENIED;

3. Defendant's motion to dismiss for failure to join a necessary party pursuant to Rule 12(b)(7) is DENIED;

4. Defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is GRANTED in part and DENIED in part;

5. Those portions of the Third, Fourth, and Fifth causes of action asserting due process claims will be DISMISSED; and

6. Defendant is directed to file an answer to the remaining claims within twenty (20) days of the date of this Memorandum-Decision and Order.

IT IS SO ORDERED.

_____
David N. Hurd
United States District Judge

Dated:  May 5, 2017
        Utica, New York.

## VII.   __ADDENDUM__

Due to the denial of class certification, the following claims remain on behalf of the individual plaintiffs:

(1) Did defendant violate the Due Process Clause of the Fourteenth Amendment, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(2), and 7 U.S.C. § 2014(a) when he failed to provide adequate pre-notice termination of benefits to plaintiffs?

(2) Did defendant violate the Due Process Clause of the Fourteenth Amendment, 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1)-(2), and 7 U.S.C. § 2014(a) when he failed to provide timely pre-notice termination of benefits to plaintiff DeMeco?

(3) Did defendant violate 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1), 7 U.S.C. § 2015(o)(3) and its implementing regulation 7 C.F.R. § 273.24(b)(2), and 7 U.S.C. § 2014(a) when he failed to provide adequate notice of ABAWD work rules and time limits, available exemptions, and good cause provisions to plaintiff Blowers upon expiration of the waiver on January 1, 2016 or when defendant first determined plaintiff Blowers subject to the new rules?

(4) Did defendant violate 7 U.S.C. § 2020(e)(10) and its implementing regulation 7 C.F.R. § 273.13(a)(1), 7 U.S.C. § 2015(o)(3) and its implementing regulation 7 C.F.R. § 273.24(b)(2), and 7 U.S.C. § 2014(a) when he failed to provide any initial written notice to

plaintiffs Brooks and DeMeco when they were first determined to be subject to the ABAWD rules and time limits, including information about the rules and time limits, available exemptions, and good cause provisions?

(5) Did defendant violate 7 U.S.C. § 2015(o) and its implementing regulation 7 C.F.R. § 273.24, and 7 U.S.C. § 2014(a) when he terminated plaintiffs' benefits without providing a fair process to individually assess and determine whether they qualified for an exemption from the work rules when defendant first identified each plaintiff as potentially subject to the work rule?

The appropriate relief, if any, shall be determined by the answers to the above remaining claims.