UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DERRICK BROOKS, on behalf
of himself and all others similarly
situated, CLIFTON DEMECO, on
behalf of himself and all others
similarly situated, and BRIAN
BLOWERS, on behalf of himself
and all others similarly situated,

    Plaintiffs,

  -v-            1:16-CV-1025

SAMUEL D. ROBERTS, as
Commissioner of the New York
State Office of Temporary
and Disability Assistance,

    Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NATIONAL CENTER FOR LAW<br> & ECONOMIC JUSTICE, INC.<br>Attorneys for Plaintiffs<br>275 Seventh Avenue, Suite 1506<br>New York, NY 10001 | DENNIS PARKER, ESQ.<br>PETRA T. TASHEFF, ESQ.<br>SAIMA A. AKHTAR, ESQ.<br>GREGORY LEE BASS, ESQ.<br>KATHARINE M. DEABLER-<br> MEADOWS, ESQ. |
| EMPIRE JUSTICE CENTER - ALBANY<br>Attorneys for Plaintiffs<br>119 Washington Avenue, Second Floor<br>Albany, NY 12210 | SUSAN C. ANTOS, ESQ. |

---

[1] Michael P. Hein has succeeded Samuel D. Roberts as Commissioner. The Clerk of the Court will be directed to amend the caption to substitute the current officeholder as the named defendant. *See* FED. R. CIV. P. 25(d).

| | |
|---|---|
| NEW YORK CITY LAW DEPARTMENT<br>Attorneys for Defendant<br>100 Church Street<br>New York, NY 10007 | OMAR J. SIDDIQI, ESQ. |
| HON. LETITIA JAMES<br>New York State Attorney General<br>Attorneys for Defendant<br>The Capitol<br>Albany, NY 12224 | C. HARRIS DAGUE, ESQ.<br>Ass't Attorney General |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I. INTRODUCTION

On August 19, 2016, plaintiffs Derrick Brooks, Clifton DeMeco, and Brian Blowers (collectively "plaintiffs") filed a class action complaint against defendant New York State Office of Temporary and Disability Assistance ("OTDA") Commissioner Samuel D. Roberts (the "Commissioner" or "defendant"). As relevant here, OTDA is the agency designated by the United States Department of Agriculture ("USDA") as responsible for administering federal Supplemental Nutrition Assistance Program ("SNAP") benefits, sometimes known as food stamps, to qualifying low-income residents in New York State.

Plaintiffs' class complaint alleged that the Commissioner's implementation of a new federal rule that imposed a three-month time limit on the receipt of SNAP benefits by able-bodied adults without dependents ("ABAWDs") who did not meet certain work requirements violated Constitutional Due Process and the federal statutory law governing the SNAP benefits program.

Among other things, plaintiffs alleged that the Commissioner failed to provide adequate notice to SNAP recipients about (1) the ABAWD time limit, (2) the work rule

requirements, (3) the conditions that would exempt an individual from the ABAWD rules, or (4) the conditions under which "good cause" would exist for non-compliance with those new rules. Plaintiffs sought declaratory and injunctive relief under 42 U.S.C. § 1983 and the federal statutory law governing the SNAP program.

On August 23, 2016, plaintiffs moved for class certification under Federal Rule of Civil Procedure ("Rule") 23 and for a preliminary injunction under Rule 65. Dkt. Nos. 9-10. The Commissioner opposed plaintiffs' requests and cross-moved to dismiss the complaint in its entirety under Rule 12(b)(6) for failure to state plausible claims for relief and under Rule 12(b)(7) for failure to join the USDA as a necessary party. Dkt. No. 21.

After full briefing on these motions, the Commissioner advised the Court that OTDA had revised the language in the written notices provided to SNAP applicants and recipients and requested permission to submit supplemental briefing in light of the revisions. Dkt. No. 33. That request was granted. Dkt. No. 36. With the benefit of the parties' supplemental briefing on the adequacy of the revised notices, the Court heard argument on the cross-motions on November 30, 2016 in Utica, New York. Decision was reserved.

On May 5, 2017, the Court granted in part and denied in part the Commissioner's 12(b)(6) motion to dismiss, denied the Commissioner's 12(b)(7) motion after concluding the USDA was not a necessary party, and denied plaintiffs' motions for class certification and for a preliminary injunction. *Brooks v. Roberts*, 251 F. Supp. 3d 401, 437 (N.D.N.Y. 2017).

As relevant here, *Brooks* held that plaintiffs were likely to succeed on several of their statutory and process-related claims regarding lack of adequate notice but found that they had failed to show irreparable harm because they could "immediately reestablish eligibility by reapplying for benefits." *Id*. at 428, 432-33. *Brooks* also held that plaintiffs met all four of the

Rule 23(a) requirements class certification but concluded it was unnecessary to formally certify any class because the Commissioner had represented "that he will apply any relief obtained by plaintiffs in this action across the board to all members of the proposed class." *Id*. at 417-421.

Thereafter, the parties initially engaged in written discovery in the form of document productions and interrogatory demands. Dague Decl., Dkt. No. 102-1 ¶ 12. Beginning in January of 2018, the parties began negotiating with an eye toward settlement. *Id*.; *see also* Antos Decl., Dkt. No. 99-1 ¶ 5. The parties continued negotiating the terms of a settlement throughout 2018 and well into 2019. *See, e.g.*, Dkt. Nos. 73, 75, 77, 79, 81, 83, 85. As the Commissioner's periodic written status updates make clear, the "nuance and complexity of the matters involved" necessitated multiple meetings, conference calls, and the exchange of position statement letters. Dkt. Nos. 73, 81.

On June 14, 2019, the parties notified the Court that they had reached a settlement agreement on all of the remaining claims and submitted the matter for Court approval. Dkt. Nos. 87-88. Among other things, this agreement (1) certified a statewide class of SNAP recipients who had their benefits reduced or terminated for failure to meet an ABAWD work requirement during a discrete time period; (2) directed certain changes to the language found in written notices to SNAP recipients; (3) directed defendant to issue policy guidance and other information to local social services districts; and (4) provided specific relief to each of the three named plaintiffs.

On September 17, 2019, after holding a fairness hearing in open court, the parties' settlement was approved. Dkt. Nos. 90-93. Thereafter, the parties tried to reach an agreement on attorneys' fees and costs. Dkt. Nos. 94-95. When that failed, the Court set a

briefing schedule on plaintiffs' fee request.  Dkt. No. 97.

On June 26, 2020, plaintiffs moved under 42 U.S.C. § 1988 for an award of reasonable attorneys' fees.  Dkt. Nos. 99.  Plaintiffs have also moved for an award of costs under Rule 54.  Dkt. No. 98.  The Commissioner has opposed plaintiffs' fee request, but not their request for costs.  Dkt. No. 102.  Plaintiffs have replied.  Dkt. No. 103.  Both motions will be considered on the basis of the submissions without oral argument.

## II. DISCUSSION

In their opening brief, plaintiffs seek an award of attorneys' fees in the amount of $367,163.82.  Pls.' Mem., Dkt. No. 99-23 at 8.[2]  This figure is broken down into more detail in plaintiffs' supporting submissions:  $161,303.67 is attributable to 722.285 hours of work done by the Empire Justice Center and $205,860.15 is attributable to 867.29 hours of work done by the National Center on Law and Economic Justice.  Antos Decl., Dkt. No. 99-1 ¶¶ 15-16.

As plaintiffs explain, these totals already include (1) a write-off of any time worked by "five of the seven law students who worked on the case"; (2) a 50% write-down on time spent for travel; and (3) a 10% across-the-board reduction that accounts for "any duplication among multiple counsel."  Pls.' Mem. at 12.  Notably, however, the $367,163.82 does not account for costs.

Plaintiffs have included in their submissions a chart that better illustrates the details of the fee request and also includes a partial breakdown of their request for costs:

---

[2] Pagination corresponds to CM/ECF.

### Empire Justice Center

|  | Hourly Rate | Hours Worked | Value of Time Worked | Billing Judg. Reducs. | Travel Reducs. @ 50% | Total Hours Charged | Presumptively Reasonable Fee |
|---|---|---|---|---|---|---|---|
| **Attorneys** | | | | | | | |
| Akhtar (2008) | $250 | 329.50 | $82,375.00 |  | 4.125 | 325.375 | $81,343.75 |
| Antos (1979) | $350 | 187.33 | $65,565.50 |  | 5.25 | 182.08 | $63,728.00 |
| Burke (2014) | $200 | 82.25 | $16,450.00 |  | 2.205 | 80.045 | $16,009.00 |
| Dellinger (1981) | $350 | 1.75 | $612.50 |  | 0 | 1.75 | $612.50 |
| Hassburg (1992) | $300 | 1.58 | $474.00 |  | 0 | 0 | $ - |
| Hetherington (1975) | $350 | 12.08 | $4,228.00 |  | 0 | 12.08 | $4,228.00 |
| **Paralegals and Law Students** | | | | | | | |
| Mobley | $110 | 61.50 | $6,765.00 |  | 1 | 60.5 | $6,655.00 |
| Vanasdale | $110 | 35.83 | $3,941.30 |  | 0.875 | 34.955 | $3,845.05 |
| Jain | $110 | 2.75 | $302.50 | 2.75 | 0 | 0 | $ - |
| Jones | $110 | 20.17 | $2,218.70 |  | 0 | 20.17 | $2,218.70 |
| Franklin | $110 | 11.58 | $1,273.80 | 11.58 | 0 | 0 | $ - |
| Nelson | $110 | 0.75 | $82.50 | 0.75 | 0 | 0 | $ - |
| Petersen | $110 | 0.75 | $82.50 | 0.75 | 0 | 0 | $ - |
| Schmitt | $110 | 5.33 | $586.30 |  | 0 | 5.33 | $586.30 |
| Williamson | $110 | 6.83 | $751.30 | 5.83 | 1 | 0 | $ - |
|  |  |  | $185,708.90 |  |  | 722.285 | $179,226.30 |
|  |  |  |  |  |  | 10% reduction | $17,922.63 |
|  |  |  |  |  |  | **Empire fees** | **$161,303.67** |
|  |  |  |  |  |  | costs | $145.34 |
|  |  |  |  |  |  | **Empire Total** | **$161,449.01** |

### National Center for Law and Economic Justice

|  | Hourly Rate | Hours Worked | Value of Time Worked | Billing Judg. Reducs. | Travel Reducs. @ 50% | Total Hours Charged | Presumptively Reasonable Fee |
|---|---|---|---|---|---|---|---|
| **Attorneys** | | | | | | | |
| Bass (1980) | $350 | 126.53 | $44,285.50 |  | 0 | 126.53 | $44,285.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cohan (1979) | $350 | 17.00 | $5,950.00 | | 0 | 17 | $5,950.00 |
| Deabler (2015) | $200 | 484.16 | $96,832.00 | | 8.38 | 475.78 | $95,156.00 |
| Fajana (1993) | $300 | 69.02 | $20,706.00 | | 0 | 69.02 | $20,706.00 |
| Mannix (1975) | $350 | 94.40 | $33,040.00 | | 0 | 94.4 | $33,040.00 |
| Tasheff (1985) | $350 | 84.56 | $29,596.00 | | 0 | 84.56 | $29,596.00 |
| | | | $230,409.50 | | | 867.29 | $228,733.50 |
| | | | | | | 10% reduction | $22,873.35 |
| | | | | | | **NCLEJ Fees** | **$205,860.15** |
| | | | | | | costs | $1,101.97 |
| | | | | | | **NCLEJ Total** | **$206,962.12** |
| | | | | | | | |
| | | | | | | **Combined Total** | **$368,411.13** |

*See* Antos Decl. at p. 7.

In opposition, the Commissioner acknowledges that plaintiffs are entitled "to some modest degree of fees from having obtained some minor, as compared to their original requested relief, concessions in settlement." Def.'s Opp'n Dkt. No. 102 at 4. However, defendant argues that plaintiffs "overstaffed the case and duplicated work among two separate firms — both of which had a redundant hand in every filing, conference and activity." *Id*. at 3. Thus, in defendant's view, the Court should impose an across-the-board reduction in fees of 70%. *Id*. at 4.

In reply, plaintiffs concede that the Commissioner correctly identified some "minimal errors" in the billing of work performed by paralegal Matthew Mobley and attorney Marc Cohan and acknowledge that the requested fee award should be reduced by $1788.70. Pls.' Reply, Dkt. No. 103 at 14; *see also* Antos Reply Decl., Dkt. No. 103-1 ¶ 14 (reducing Mobley's time), ¶ 18 (reducing Cohan's time).

However, plaintiffs defend the remainder of their requested fees—they insist that they achieved substantial changes to OTDA's written notice as well as other systemic changes as a result of this complex litigation. Pls.' Reply at 6-11. Plaintiffs also argue that they are entitled to fees for work performed on the pre-answer motion practice even though it did not result in preliminary relief. *Id*. Finally, plaintiffs maintain that they staffed the case appropriately: junior attorneys performed most of the work, and consulted with more senior attorneys on a more limited basis. *Id*.

### A. Attorney's Fees

A court may award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (explaining that courts cannot depart from the so-called "American Rule" for fees absent some "express statutory authorization to the contrary"). "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry." *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996).

### 1. Prevailing Party

"First, the party must be a 'prevailing party' in order to recover." *Pino*, 101 F.3d at 237. "A party is considered a prevailing party for purposes of awarding attorney's fees under § 1988 if the party 'succeed[ed] on any significant issue in litigation which achieves some fo the benefit the parties sought in bringing suit.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 23 (N.D.N.Y. 2015) (D'Agostino, J.) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). "To qualify for attorney's fees, there must be a 'judicially sanctioned change in the legal relationship of the parties.'" *Id*. (quoting *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 137 (2d Cir. 2011)).

"In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially

alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Osterweil*, 92 F. Supp. 3d at 23 (quoting *Farrar*, 506 U.S. at 111-12.  Section 1988 "has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting," and therefore a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Id*. (quoting *Wilder v. Bernstein*, 965 F.2d 1196, 1201-02 (2d Cir. 1992)).

The Commissioner acknowledges that plaintiffs prevailed in some measure but argue that the degree of their success was modest at best.  Defs.' Opp'n at 7.  Upon review, however, the Court agrees with plaintiffs that they obtained an "excellent result" in this suit.  As the Second Circuit has explained, "[i]t is sufficient that the plaintiff succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained." *Hines v. City of Albany*, 613 F. App'x 52, 53 (2d Cir. 2015) (summary order) (cleaned up).

As relevant here, "[a] plaintiff involved in litigation ultimately resolved by settlement may be considered a prevailing party if the relief obtained is 'of the same general type' as the relief sought." *Baird*, 219 F. Supp. 2d at 518 (quoting *Raishevich v. Foster*, 247 F.3d 337, 345 (2d Cir. 2001)).  Plaintiffs' putative class complaint and request for preliminary relief were based on defendant's alleged failure to provide legally adequate notice of the ABAWD rules.  And in *Brooks*, the Court concluded that plaintiffs were likely to succeed on the merits of several of those process-related claims.  251 F. Supp. 3d at 417-21.  Although *Brooks* dismissed several of plaintiffs' claims, the parties' carefully negotiated class settlement resulted in significant improvements in defendant's procedures *and* in specific relief to the three named plaintiffs.

- 9 -

## 2. **Reasonableness**

Second, "the requested fee must also be reasonable." *Pino*, 101 F.3d at 237. "To determine a reasonable amount of attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case." *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (Sharpe, J.) (applying lodestar calculation to False Claims Act award); *see also Johnson v. Mauro*, 2019 WL 5842765, at *1 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.) (applying lodestar calculation to § 1988 fee request).

Under the lodestar approach, the "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008)). As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id*.

To make that determination, the district court should consider a number of factors, including but not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

Going beyond this non-exclusive list of factors, district courts enjoy substantial

- 10 -

discretion in determining an appropriate fee award, and "may use estimates based on their overall sense of a suit." *Rubar*, 306 F. Supp. 3d at 489; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). Indeed, a district court may even use a "percentage deduction of the requested fees 'as a practical means of trimming fat from a fee application[.]'" *Rubar*, 306 F. Supp. 3d at 489 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

### i. Hourly Rates

Plaintiffs seek $350 per hour for the "very experienced" attorneys with greater than thirty years' experience (Antos, Dellinger, Hetherington, Feldman, Bass, Tasheff, Mannix, and Cohan); $300 per hour for the "experienced" attorneys with between twenty and thirty years' experience (Hassberg and Fajana); $250 per hour for the "senior associate" attorneys with between twelve and twenty years' experience (Akhtar); $200 per hour for the "recently admitted" attorneys (Burke and Deabler-Meadows); and $110 per hour for two paralegals (Vanasdale and Mobley) and two law students (Schmitt and Jones). Antos Decl. ¶ 18; Deabler-Meadows Decl., Dkt. No. 99-14 ¶ 14. Plaintiffs have submitted time records for these individuals as well as resumes establishing their legal and other relevant experience.

In determining a reasonable hourly rate, "[t]he Second Circuit has instructed district courts to consider 'all case-specific variables' including factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Torcivia v. Suffolk County*,

437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020).³  However, the trial court "need not robotically recite and make separate findings as to all twelve of the *Johnson* factors."  *Id*. (cleaned up).

Under the "forum rule," the reviewing court generally applies the prevailing hourly rate in the district in which it sits to calculate a presumptively reasonable fee.  *Osterweil*, 92 F. Supp. 3d at 26.  Thus, "[f]ees should not be awarded at higher out-of-district rates unless a reasonable client would have selected out-of-district counsel because doing so would likely . . . produce a substantially better net result."  *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (citation omitted).

Plaintiffs have offered a declaration in support of their claim that the requested hourly rates are charged by lawyers with similar experience located within the Northern District of New York.  Privitera Decl., Dkt. No. 99-13 ¶¶ 4-8.  Plaintiffs have also offered recent opinions in which courts in this District have endorsed similar hourly rates for attorneys with similar experience.  Pls.' Mem. at 10-11.

The Commissioner argues that these rates are "exceedingly high."  Def.'s Opp'n at 16.  In defendant's view, the high hourly rates simply cannot be squared with the "duplication of work, overstaffing, multiple levels of editing and rewriting, constant conference calls and meetings with four, five six and more lawyers, and high number of hours to complete projects recognized in this circuit as taking far less time."  *Id*. at 17.

In particular, the Commissioner emphasizes that a $200 per hour rate for Burke and

---

³ The twelve *Johnson* factors are:  "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Torcivia*, 437 F. Supp. 3d at 251 n.3 (citations omitted).

Deabler-Meadows is too high because the majority of hours these two recent graduates billed were during 2016, 2017, and 2018, years when both attorneys had between one and three years' experience. Def.'s Opp'n at 17-18. Defendant also contends that $110 per hour for paralegal work is excessive, especially when a review of the bills indicates that most of these billings were "clerical" in nature. *Id*. at 18.

Upon review, the Court agrees in part with the Commissioner and will reduce some of the hourly rates accordingly. "For recent cases in this District, hourly rates have ranged from $250 to $325 for partners of a firm." *Broadcast Music, Inc. v. DeJohn's on Lark, Inc.*, 2020 WL 1986903, at *7 (N.D.N.Y. Apr. 27, 2020) (Scullin, J.) (collecting cases). As Judge Scullin recently concluded in *Broadcast Music*, $350 per hour is a reasonable hourly rate for attorneys with thirty or more years' experience. *Id*. Plaintiffs' request for $300 per hour for the attorneys with between twenty and thirty years' experience, and for $250 per hour for the attorneys with between twelve and twenty years' experience, are also reasonable and will be approved. *See, e.g.*, *Citizens Bank, N.A. v. Krolak*, 2019 WL 3304556, at *4 (N.D.N.Y. July 23, 2019) (awarding $325 per hour to attorney with 18 years' experience and $275 per hour to attorney with 10 years' experience).

However, $200 per hour for the "recently admitted" attorneys is slightly too high for this District. To take one example, Judge D'Agostino recently reduced the hourly rate of an attorney with fewer than four years of experience from $240 per hour to $120 per hour. *Osterweil*, 92 F. Supp. 3d at 28. Accordingly, the Court finds that a rate of $150 per hour is more appropriate for these "recently admitted attorneys."

The same is true of plaintiffs' request for $110 per hour for the paralegals and law students. "Courts in this District have routinely held that $80 to $90 per hour is an

appropriate rate for paralegals." *Broadcast Music, Inc.*, 2020 WL 1986903 at *7 (reducing request by "Managing Clerk" to $90 per hour); *see also Williams v. N.Y. City Housing Auth.*, 975 F. Supp. 317, 326 (S.D.N.Y. 1997) ("A law student's time is compensable in an award of attorney fees at the same rate as a paralegal."). Accordingly, the Court finds that a rate of $90 per hour is more appropriate for the paralegals and law students. These changes will be reflected in an adjusted chart located in the conclusion section of this opinion.

### ii. **Hours Worked**

"The fee applicant also bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Johnson*, 2019 WL 5842765, at *7 (citation omitted). "In determining a reasonable fee, the district court should exclude . . . hours that were not reasonably expended, including hours that are excessive redundant, or otherwise unnecessary." *Osterweil*, 92 F. Supp. 3d at 28 (cleaned up).

"The relevant inquiry for the court 'is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Osterweil*, 92 F. Supp. 3d at 28 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). However, "[a] district court is not obligated to undertake a line-by-line review of a fee application." *Torcivia*, 437 F. Supp. 3d at 253. "In excluding hours that were not reasonably expended, the court has discretion simply to deduct a reasonable percentage of the number of hours claims as a practical means of trimming fact from a fee application." *Osterweil*, 92 F. Supp. 3d at 28 (cleaned up).

Plaintiffs contend that billing for 1,589.58 hours is reasonable because "not all of those attorneys reflected in the billing worked on the case at the same time." Pls.' Mem. at 11. As plaintiffs explain, several senior attorneys retired over the course of the litigation, and

several others had only "very specific and limited roles." *Id*. at 11-12. Plaintiffs also point out that the case was only staffed with one paralegal at a time—Mobley replaced Vanasdale at the end of 2016. *Id*. at 12. Even so, plaintiffs represent that they have already voluntarily cut their bill by 10% to account for the fact that multiple counsel were involved in this case. *Id*.

The Commissioner argues that plaintiffs overstaffed and brazenly overbilled for time on the few discrete projects that were actually necessary to pursue this case from beginning to end: the drafting of the complaint, the briefing on the motions for preliminary relief and class certification and in opposition to the motion to dismiss, and the hours spent related to settlement activities. Def.'s Opp'n at 9-15.

For instance, the Commissioner points out that plaintiffs have billed 195.49 hours for the preliminary motion practice even though "courts in this district and circuit have similarly found billings for motion practice in excess of one hundred hours to be excessive." Defs.' Mem. at 13. Defendant also points out that plaintiffs billed 86.98 hours for drafting the original class complaint even though courts in this District usually find that anything over 25 hours would be excessive. *Id*. at 14. Defendant also argues that the billing shows that each conference call and meeting involved between four and eleven lawyers. *Id*. at 12.

Finally, the Commissioner argues that most of plaintiffs' paralegal billings are improper. Def.'s Mem. at 15-16. As defendant explains, plaintiffs routinely billed for the presence of a paralegal "at all settlement conferences, certain court conferences and conference calls and meetings already staffed with four or more lawyers." *Id*. Plaintiffs also billed for "debrief" sessions where there was no discernible need for a paralegal. *Id*.

Plaintiffs reply that they staffed this case at the level necessary to litigate this kind of complex class action dispute involving difficult questions of administrative law. *See* Pls.'

Reply at 9. According to plaintiffs, defendant "actively misrepresents" plaintiffs' billing efforts, and his own table is "riddled with errors and references numerous individuals for whom Plaintiffs have not billed . . . and eight individuals who simply do not exist." *Id*.

Upon review, the Court agrees in part with the Commissioner. "The party seeking attorney's fees must support the number of hours expended with contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done." *Anello v. Anderson*, 191 F. Supp. 3d 262, 283 (W.D.N.Y. 2016) (cleaned up). Plaintiffs' submissions undoubtedly comply with this requirement.

This case involved complex questions about the interplay of state and federal administrative law. Even after the parties agreed that settlement was the top priority, the Commissioner's periodic status updates make clear that there were numerous contested issues to work through. The Court rejects the suggestion made in defendant's papers that the motion for class certification and for preliminary relief were unnecessary or inappropriate in light of the fact that OTDA undertook revisions to the written notices at or around the same time. If anything, there is evidence that the class litigation and preliminary motion practice filed by plaintiffs encouraged defendant to complete these revisions. *Cf. Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments.").

However, an independent review of the billing records does show that some of the entries may fairly be characterized as devoting excessive time to certain tasks or duplicative in the sense that a team of lawyers were involved in an activity that could have been accomplished just as well with leaner staffing. Accordingly, a lesser across-the-board

reduction of 30% will be applied to the fee award.

### B. Costs

Plaintiffs have also requested $1,247.31 in costs. Under § 1988, plaintiffs are entitled to recover costs in addition to attorney's fees. *Luessenhop v. Clinton County*, 558 F. Supp. 2d 247, 271 (N.D.N.Y. 2008) (Treece, M.J.). The Commissioner does not appear to dispute plaintiffs' request for costs, and upon an independent review the request appears to be reasonable and the type of "out of pocket disbursements which are ordinarily charged to clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (1989); *see also Johnson*, 2019 WL 5842765, at *10 (identifying costs as "out-of-pocket disbursements" that are distinguishable from "routine office overhead"). Accordingly, plaintiffs' motion for costs will be granted.

## IV. CONCLUSION

Plaintiffs' requested rate of $350 per hour for Antos, Dellinger, Hetherington, Feldman, Bass, Tasheff, Mannix, and Cohan will be approved. Plaintiffs' requested rate of $300 per hour Hassberg and Fajana will be approved. Plaintiffs' requested rate of $250 per hour for Akhtar will be approved. However, plaintiffs' requested rate of $200 per hour for Burke and Deabler-Meadows will be reduced to $150 per hour and plaintiffs' requested rate of $110 per hour for Vanasdale, Mobley, Schmitt, and Jones will be reduced to $90 per hour. After recalculating those rates, the Court will apply a 30% across-the-board reduction in lieu of plaintiffs' self-imposed 10% reduction. The Court will also reduce Mobley's time by 1.8 hours to eliminate a duplicative entry, Antos Reply Decl. ¶ 14, and Cohan's time by 2.7 hours to eliminate a duplicative entry, *id*. ¶ 18.

As a result, the attorney's fees are awarded as follows:

- 17 -

**Empire Justice Center**

|  | Hourly Rate | Hours Worked | Value of Time Worked | Billing Judg. Reducs. | Travel Reducs. @ 50% | Total Hours Charged | Lodestar Amount |
|---|---|---|---|---|---|---|---|
| **Attorneys** | | | | | | | |
| Akhtar (2008) | $250 | 329.50 | $82,375.00 | | 4.125 | 325.375 | $81,343.75 |
| Antos (1979) | $350 | 187.33 | $65,565.50 | | 5.25 | 182.08 | $63,728.00 |
| Burke (2014) | $150 | 82.25 | $12,337.50 | | 2.205 | 80.045 | $12,006.75 |
| Dellinger (1981) | $350 | 1.75 | $612.50 | | 0 | 1.75 | $612.50 |
| Hassburg (1992) | $300 | 1.58 | $474.00 | | 0 | 0 | $ - |
| Hetherington (1975) | $350 | 12.08 | $4,228.00 | | 0 | 12.08 | $4,228.00 |
| **Paralegals and Law Students** | | | | | | | |
| Mobley | $90 | 59.7 | $5,373.00 | | 1 | 60.5 | $5,445.00 |
| Vanasdale | $90 | 35.83 | $3,224.70 | | 0.875 | 34.955 | $3,145.95 |
| Jain | $110 | 2.75 | $302.50 | 2.75 | 0 | 0 | $ - |
| Jones | $90 | 20.17 | $1,815.30 | | 0 | 20.17 | $1,815.30 |
| Franklin | $110 | 11.58 | $1,273.80 | 11.58 | 0 | 0 | $ - |
| Nelson | $110 | 0.75 | $82.50 | .75 | 0 | 0 | $ - |
| Petersen | $110 | 0.75 | $82.50 | .75 | 0 | 0 | $ - |
| Schmitt | $90 | 5.33 | $479.70 | | 0 | 5.33 | $479.70 |
| Williamson | $110 | 6.83 | $751.30 | 5.83 | 1 | 0 | $ - |
| | | | $185,708.90 | | | 722.285 | $172,804.95 |
| | | | | | | 30% reduction | $51,841.49 |
| | | | | | | **Empire fees** | **$120,963.46** |
| | | | | | | costs | $145.34 |
| | | | | | | **Empire Total** | **$121,108.80** |

**National Center for Law and Economic Justice**

|  | Hourly Rate | Hours Worked | Value of Time Worked | Billing Judg. Reducs. | Travel Reducs. @ 50% | Total Hours Charged | Lodestar Amount |
|---|---|---|---|---|---|---|---|
| **Attorneys** | | | | | | | |
| Bass (1980) | $350 | 126.53 | $44,285.50 | | 0 | 126.53 | $44,285.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cohan (1979) | $350 | 14.3 | $5,005.00 | | 0 | 17 | $5,950.00 |
| Deabler (2015) | $150 | 484.16 | $72,624.00 | | 8.38 | 475.78 | $71,367.00 |
| Fajana (1993) | $300 | 69.02 | $20,706.00 | | 0 | 69.02 | $20,706.00 |
| Mannix (1975) | $350 | 94.40 | $33,040.00 | | 0 | 94.4 | $33,040.00 |
| Tasheff (1985) | $350 | 84.56 | $29,596.00 | | 0 | 84.56 | $29,596.00 |
| | | | $230,409.50 | | | 867.29 | $204,944.50 |
| | | | | | | 30% reduction | $61,483.35 |
| | | | | | | **NCLEJ Fees** | **$143,461.15** |
| | | | | | | costs | $1,101.97 |
| | | | | | | **NCLEJ Total** | **$144,563.12** |

This results in a total attorney's fee award of $264,424.16, and a total costs award of $1,247.31, for a total award of $265,671.92.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for attorney's fees is GRANTED in part;

2. Plaintiffs' motion for costs is GRANTED; and

3. Plaintiffs are granted $265,671.92 in attorney's fees and costs.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: November 19, 2020
       Utica, New York.

United States District Judge